[No. 44155-8-I. Division One. September 18, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES OLIVER
HUNTER, JR., *Appellant*.

*Cheryl D. Aza*, for appellant.

*Randall K. Gaylord, Prosecuting Attorney*, and *Charles Z. Silverman, Deputy*; and *Philip J. Buri* (of *Brett & Daugert, P.L.L.C.*), for respondent.

WEBSTER, J. — Appellant James Hunter argues that the trial court's imposition of a drug fund contribution as part of his sentence was not statutorily authorized and violates the separation of powers doctrine, procedural due process guarantees, and the equal protection guarantee. We find that the trial court's imposition of a drug fund contribution was authorized and was not a constitutional violation. We affirm.

## BACKGROUND

Appellant entered an *Alford*[1] plea to one count of delivery of methamphetamine and one count of delivery of cocaine. He entered a guilty plea to one count of unlawful possession of a firearm. The statement of defendant on plea of guilty stated that the prosecuting attorney would recommend to the sentencing judge that Hunter pay $2,500 into the San Juan County Drug Fund. Hunter signed the statement and

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

the trial court accepted the plea as knowingly, intelligently, and voluntarily made. At the sentencing hearing, defense counsel objected to the imposition of the drug fund contribution on the grounds of Hunter's indigency. The trial court stated:

> I am going to impose a $2500 contribution to the San Juan County drug fund. It's obvious from the Court's review of the record here that substantial amounts of money were necessary to investigate and ultimately charge and convict Mr. Hunter here, so that's certainly an appropriate amount to impose.

4 Report of Proceedings at 37.

## ANALYSIS

### A. Hunter May Raise His Arguments for the First Time on Appeal

The State argues preliminarily that Hunter may not raise his arguments for the first time on appeal because he has not demonstrated a manifest error affecting a constitutional right. Hunter's response is twofold. First, he argues that any illegal or erroneous sentence may be challenged for the first time on appeal. Second, he argues that the error is manifest and affects his constitutional rights.

RAP 2.5(a) is discretionary: "The appellate court *may* refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a) (emphasis added). *See also State v. Ford*, 137 Wn.2d 472, 477, 973 P.2d 452 (1999) (noting that the rule is discretionary, not absolute, and never acts as an absolute bar to review).

Furthermore, "[i]n the context of sentencing, established case law holds that illegal or erroneous sentences may be challenged for the first time on appeal." *Ford*, 137 Wn.2d at 477 (collecting cases). *Ford* involved a potentially erroneous offender score, and the court remanded for an evidentiary hearing. *Id.* at 475, 486. This rule applies likewise to a challenge to the sentencing court's authority to impose a sentence. *See State v. Paine*, 69 Wn. App. 873, 884,

850 P.2d 1369 (1993) (finding that the trial court's reasons for imposing an exceptional sentence downward did not, as a matter of law, constitute substantial and compelling reasons justifying the downward sentence and ruling that the State did not waive its right to appeal the sentencing error by failing to object below). Such first time challenges to erroneous sentences are not limited to constitutional errors. *See In re Personal Restraint Petition of Fleming*, 129 Wn.2d 529, 532, 919 P.2d 66 (1996). Thus, we review Hunter's challenges to the sentencing court's imposition of the drug fund contribution.

### B. The Legislature Authorized the Imposition of Drug Fund Contributions

■ ■ Hunter first argues that the legislature has not adequately authorized the imposition of drug fund contributions because the Sentencing Reform Act of 1981 (SRA) does not specifically authorize and describe the drug fund contribution and the legislature has failed to provide any guidance concerning when such contributions are to be imposed or how the amounts are to be determined. We begin with the court's authority to order *legal financial obligations* as part of a sentence:

> Whenever a person is convicted of a felony, the court may order the payment of a legal financial obligation as part of the sentence. The court must on either the judgment and sentence or on a subsequent order to pay, designate the total amount of a legal financial obligation and segregate this amount among the separate assessments made for restitution, costs, fines, and other assessments required by law.

RCW 9.94A.145(1).

"Court-ordered legal financial obligation" is statutorily defined:

> "Court-ordered legal financial obligation" means a sum of money that is ordered by a superior court of the state of Washington for legal financial obligations which may include restitution to the victim, statutorily imposed crime victims' compensation fees as assessed pursuant to RCW 7.68.035,

court costs, county or interlocal drug funds, court-appointed attorneys' fees, and costs of defense, fines, and any other financial obligation that is assessed to the offender as a result of a felony conviction.

RCW 9.94A.030(11).

Hunter argues that this definition, which admittedly includes "county or interlocal drug funds," is insufficient to support the imposition of a drug fund contribution because it gives the trial court broad discretion. He points out that the statute does not expressly limit drug fund contributions to drug crimes. Hunter compares this definition purportedly authorizing for drug contributions with the specific authorization for restitution: "[t]he court *shall* order restitution whenever the offender is convicted of a felony that results in injury to any person or damage to or loss of property . . . ." RCW 9.94A.120(19) (emphasis added). Hunter contrasts this lack of guidance concerning imposition of the drug fund contribution with the other types of financial obligations listed. He asserts that restitution, victims' compensation fees, and fines are explicitly covered by statute.[2] The remaining items, including court costs, court appointed attorney fees, and costs of defense, are ascertainable based on readily available evidence.

Hunter also points out that the discretion of the trial court is at odds with one of the purposes of the SRA, which is to structure discretionary sentencing and to provide for consistency in sentencing. *See* RCW 9.94A.010; *State v. Barnes*, 117 Wn.2d 701, 710, 818 P.2d 1088 (1991).

But we find that the legislature clearly contemplated the payment of drug fund contributions. We cannot ignore the language of the statute that includes county or interlocal drug funds in the definition of the court-ordered legal financial obligations that the court is authorized to impose. *See City of Seattle v. Fontanilla*, 128 Wn.2d 492, 500, 909 P.2d 1294 (1996) (the court must give meaning to every word in a statute).

---

[2] *See* RCW 9.94A.140-.142, for restitution; RCW 7.68.035 for victims' compensation assessments; and RCW 69.50.401 for fines for violations of the Uniform Controlled Substances Act.

*C. The Trial Court's Discretion to Impose a Drug Fund Contribution Does Not Violate the Separation of Powers Doctrine*

Hunter next argues that the trial court's broad discretion to impose a drug fund contribution is a violation of the separation of powers doctrine because it is the responsibility of the legislature to set the minimum and maximum penalties for crimes; the trial court's discretion to set this penalty, Hunter argues, intrudes upon the legislature's function.

It is well settled in Washington that establishing the penalties for crimes is a legislative function. *See State v. Thorne*, 129 Wn.2d 736, 767, 921 P.2d 514 (1996) (collecting cases). The power of the legislature in this respect is plenary, subject only to constitutional constraints. *See id.* (citing *State v. Mulcare*, 189 Wash. 625, 628, 66 P.2d 360 (1937)). Thus, it is no violation of the separation of powers doctrine where the legislature removes all sentencing discretion from the trial court. *See Thorne*, 129 Wn.2d at 768-69 (finding that the Persistent Offender Accountability Act does not violate the separation of powers doctrine).

But, as the State is quick to point out, the legislature may grant the trial court discretion in sentencing. Historically, the trial court was granted wide discretion in sentencing matters. *See Barnes*, 117 Wn.2d at 710. The SRA limited that discretion by instituting a determinate sentencing scheme but still leaves the trial court with sentencing discretion within the established parameters. *See State v. Ammons*, 105 Wn.2d 175, 181, 713 P.2d 719, 718 P.2d 796 (1986). The trial court exercises whatever discretion is granted it by the legislature. *See Thorne*, 129 Wn.2d at 768.

Two concerns are paramount in considering separation of powers challenges to judicial action: " '[F]irst, that the Judicial Branch neither be assigned nor allowed tasks that are more properly accomplished by [other] branches, and, second, that no provision of law impermissibly threat-

ens the institutional integrity of the Judicial Branch.'" *Carrick v. Locke*, 125 Wn.2d 129, 136, 882 P.2d 173 (1994) (quoting *Mistretta v. United States*, 488 U.S. 361, 383, 109 S. Ct. 647, 102 L. Ed. 2d 714 (1989)) (internal quotation marks omitted).

We do not think that the imposition of a drug fund contribution violates the separation of powers doctrine. The legislature is free to remove sentencing discretion and is likewise free to grant the court some amount of discretion. Furthermore, we do not think that this task is more appropriately accomplished by another branch because the judiciary is uniquely qualified, by virtue of knowing the facts of each case, to determine whether to impose a drug fund contribution and the amount to be imposed. *See Thorne*, 129 Wn.2d at 768 ("We believe the trial judge—the individual having the knowledge, experience and judgment in this area, and having the best opportunity to observe and evaluate a particular defendant—is best suited to determine an appropriate and fair sentence in any given case."). Finally, we do not see that the institutional integrity of either the judicial or the legislative branch is threatened: the power of the judiciary is not diminished and the legislature is not threatened by the court's exercise of discretion in this matter.

### D. Due Process

Hunter contends that the imposition of a drug fund contribution violated his procedural due process rights in several ways: (1) inclusion of drug fund contributions in the SRA definition of financial legal obligations is vague and fails to provide adequate notice to the citizen of when a drug fund contribution will be imposed and what amount will be imposed; (2) the SRA definition is void for vagueness because the legislature failed to provide minimal guidelines to guard against arbitrary and discriminatory application;[3]

---

[3] Hunter labels his vagueness argument as a substantive due process violation. We have placed this argument instead under the procedural due process analysis. First, as discussed *infra*, vagueness is part of a procedural due process notice analysis because a vague criminal statute fails to adequately give notice to the

(3) the trial court's broad discretion eliminates meaningful appellate review; and (4) the lack of guidelines for establishing the amount of the contribution allows a defendant to be sentenced without sufficient proof to support the sentence.[4]

## 1. Vagueness and Notice

 Due process requires that citizens have adequate notice of the terms of the law—"[People] of common intelligence cannot be required to guess at the meaning of the enactment." *State v. Shipp*, 93 Wn.2d 510, 516, 610 P.2d 1322 (1980) (internal quotation marks omitted). Citizens must have notice not only of what conduct is criminal but also of the severity of the penalty. *See BMW of N. Am., Inc., v. Gore*, 517 U.S. 559, 574, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996) ("Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose."); *United States v. Batchelder*, 442 U.S. 114, 123, 99 S. Ct. 2198, 60 L. Ed. 2d 755 (1979) (vague sentencing provisions may be constitutionally infirm if they fail to state with sufficient clarity the consequences of violating a given criminal statute).

The State argues that Hunter received adequate notice because he was informed in his plea statement, which he

citizenry of what conduct is criminal. An independent second basis for finding a statute void for vagueness is that it allows arbitrary and discriminatory enforcement. *See City of Chicago v. Morales*, 527 U.S. 41, 56, 119 S. Ct. 1849, 1859, 144 L. Ed. 2d 67 (1999). This is what Hunter argues is a substantive due process violation. But the same vagueness in the statute leads to both problems, and we think this argument is properly placed under a procedural due process framework.

[4] Hunter acknowledges that his argument concerning arbitrary and discriminatory enforcement, discussed *infra*, is a challenge to the statute as applied to him and not a facial challenge because, as Hunter points out, vagueness challenges to enactments which do not involve first amendment rights are to be judged as applied and are not properly evaluated for facial validity. *See City of Spokane v. Douglass*, 115 Wn.2d 171, 182, 795 P.2d 693 (1990). Thus, none of Hunter's due process arguments based on vagueness may be applied to a facial challenge. We interpreted his remaining due process arguments as going to a facial challenge because his implication is that under no set of circumstances could application of the statute in its current state be found sufficiently definite to be constitutional.

signed, that the prosecuting attorney would recommend to the sentencing judge that Hunter pay a $2,500 drug contribution. Hunter responds that the central issue is that he had no notice of the potential sentence when he *committed* the crime. He notes that the statute does not limit the imposition of a drug fund contribution to drug-related crimes and places no limit on the maximum amount of a contribution nor provides a method for calculating the amount.

▇▇▇▇ Wherever possible, we have a duty to construe a statute so as to uphold its constitutionality. *See State v. Furman*, 122 Wn.2d 440, 458, 858 P.2d 1092 (1993). We find that the statute here may be given an interpretation that meets constitutional requirements. First, as noted above, we find that the legislature authorized the trial court to impose a drug fund contribution; thus, Hunter had notice that such a contribution may be exacted. Second, although the statute does not expressly limit the imposition of a drug fund contribution to drug-related crimes, we find this a reasonable and rather obvious interpretation. Finally, although the drug fund contribution is not a fine, we find it analogous and hold that the trial court is limited by the $20,000 maximum fine set for any felony for which a maximum fine is not statutorily fixed. *See* RCW 9.92.010.[5] We further interpret the statute as requiring the amount of the contribution to be based on the costs of the investigation. A defendant may challenge the amount of the contribution, and if the defendant does so, the prosecutor must substantiate the amount.

### 2. *Vagueness and arbitrary enforcement*

▇▇▇▇ "Vagueness may invalidate a criminal law for either

---

[5] RCW 9.92.010 provides:

Every person convicted of a felony for which no maximum punishment is specially prescribed by any statutory provision in force at the time of conviction and sentence, shall be punished by confinement or fine which shall not exceed confinement in a state correctional institution for a term of ten years, or by a fine in an amount fixed by the court of not more than twenty thousand dollars . . . .

of two independent reasons." *City of Chicago v. Morales*, 527 U.S. 41, 56, 119 S. Ct. 1849, 1859, 144 L. Ed. 2d 67 (1999). First, as discussed above, "it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." *Id.*, (citing *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983)); *see also City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990). Although *Morales* and *Kolender* involved statutes or ordinances that failed to provide standards to the police for enforcing the law, the rule should apply to standards for the judiciary as well. *See Douglass*, 115 Wn.2d at 181 ("the due process clause forbids criminal statutes that contain no standards and allow police officers, judge, and jury to subjectively decide what conduct the statute proscribes or what conduct will comply with a statute in any given case") (internal quotation marks omitted).

But we do not think the trial court's discretion in this matter under the interpretation we provide here will encourage arbitrary and discriminatory enforcement. Imposition of the contribution will be limited to drug-related crimes and the amount will be based on the costs of the investigation.

### 3. *Meaningful appellate review*

 Hunter argues that he has been denied the procedural safeguard of meaningful review because there are no standards against which the reviewing court may gauge the trial court's exercise of discretion. But we agree with the State that the trial court's exercise of discretion here will be subject to review for an abuse of that discretion.

### 4. *Proof in the record to support the sentence*

Hunter argues that the imposition of the contribution is not supported by the record. The trial court apparently based the amount of the contribution on the grounds that "substantial amounts of money were necessary to investigate and ultimately charge and convict Mr. Hunter."

Hunter argues that the record contains no evidence concerning the costs of the investigation. But, although the record does not contain substantiation of the costs of the investigation, the trial court apparently considered those costs. Considering that the trial court did not have the benefit of our interpretation of the statute, we find that imposition of the amount of $2,500 was not an abuse of the trial court's discretion in this case.

## CONCLUSION

We find that the trial court's imposition of a drug fund contribution is authorized by statute and does not violate the separation of powers doctrine or the due process clause. We further find that the record here does not adequately support an equal protection analysis because Hunter has not provided a basis upon which to find that he has been treated differently than others similarly situated. We affirm the imposition of the $2,500 drug fund contribution in this case.

AGID, C.J., and COLEMAN, J., concur.

Review denied at 142 Wn.2d 1026 (2001).

