# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47487-5-II |
| Respondent, | |
| v. | |
| CHARLENE JEANETTE ALLEN, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Charlene Jeanette Allen appeals the legal financial obligations (LFOs) the trial court imposed following her guilty plea convictions for unlawful possession of a controlled substance (methamphetamine)[1] and third degree theft.[2]  She argues that the trial court (1) imposed two LFOs that were not authorized and not supported by the record and (2) erred when it determined that she had the current or future ability to pay LFOs.[3]  We agree that two of the LFOs are not supported by the evidence and that the trial court failed to conduct an adequate inquiry into Allen's current and future ability to pay LFOs.  Accordingly, we reverse and remand

---

[1] RCW 69.50.4013(1).

[2] RCW 9A.56.050.

[3] In a supplemental brief, she also argues that should she not prevail in this appeal, we should not impose appellate costs.  Because Allen is the prevailing party in this appeal, we do not address this supplemental argument.

this matter to the trial court (1) to strike the drug enforcement fund contribution to OPNET[4] and drug court costs and (2) to reexamine Allen's current and future ability to pay the remaining discretionary LFOs as required under *State v. Blazina*, 182 Wn.2d 827, 839, 344 P.3d 680 (2015).

FACTS

On February 13, 2015, officers from the Sequim Police Department were dispatched to a theft in progress. When the officers contacted her, Allen admitted that she had taken some brushes from the store without paying for them. The officers arrested her for third degree theft.

The officers then discovered drug paraphernalia and what appeared to be marijuana, methamphetamine, and heroin in her possession. Allen told the officers that she regularly used methamphetamine, heroin, and marijuana and that she had relapsed three weeks earlier. The officers field tested the suspected drugs and then sent them to the Washington State Patrol crime lab for testing.

The State charged Allen with unlawful possession of methamphetamine, unlawful possession of heroin, and third degree theft. During the probable cause hearing, the trial court asked Allen if she was employed. She responded that she was not currently employed and that she had last worked a "couple months ago." Report of Proceedings (RP) (Feb. 17, 2015) at 6. She stated that she had been working 30 hours a week at a "laundry mat in Sequim" and that she made minimum wage. RP (Feb. 17, 2015) at 7. The trial court found that Allen did not "have the financial resources to hire an attorney" and appointed counsel at public expense. RP (Feb. 17, 2015) at 7.

---

[4] Olympic Peninsula Narcotics Enforcement Team.

Two months later, Allen pleaded guilty to unlawful possession of methamphetamine and third degree theft.[5] Allen's guilty plea statement acknowledged that the State would recommend that she pay the following LFOs: a $500 victim's assessment fee, a $100 deoxyribonucleic acid (DNA) fee, $200 court costs, $500 in attorney fees, and "$1000 drug fine split between drug court and OPNET." Clerk's Papers (CP) at 32.

At the change of plea hearing, the State recommended a first-time offender resolution, requested that the trial court convert the 30-day sentence to 240 hours of community service, and asked for six months of community custody and a chemical dependency evaluation. The State requested the LFOs as set out above.

Defense counsel stated that he did not know if Allen had worked recently, noting that she was "young"[6] so he was not sure if "she's ever had much of a career." RP (Apr. 21, 2015) at 20. In regard to the $1,000 fine that the State had proposed be split between OPNET and the drug court, defense counsel asked the trial court to "waive [t]he drug fine due to indigence" and argued that there was no authority allowing the trial court to instead "impose restitution" to be split between OPNET and the drug court. RP (Apr. 21, 2015) at 20.

After hearing from counsel, the trial court asked Allen if she had ever had drug treatment. Allen stated that she had "[a] few years back" and that although she did not complete the program, she had been "clean and sober for quite a while." RP (Apr. 21, 2015) at 21. She further stated that

---

[5] The unlawful possession of heroin charge was dismissed.

[6] Allen was 27 years old when this hearing was held.

3

she had relapsed when her life became stressful because the State took away her son, but she stated that she knew she could stay clean because she had done it before.

The trial court then asked her about her education and employment. Allen told the trial court that she had a general educational development certificate and that she had done "random stuff" like waitressing and care giving. RP (Apr. 21, 2015) at 22. When the trial court asked her if she had any special skills, she responded, "Just being a mom." RP (Apr. 21, 2015) at 22. The court then asked, "[D]o you have anything prohibiting you from having full time employment, any disabilities or anything?" RP (Apr. 21, 2015) at 23. Allen responded, "No, just these new charges." RP (Apr. 21, 2015) at 23.

After this colloquy, the trial court stated that because Allen did not have any disabilities, it was "going to find [she did] have the capacity to have some earnings in the future." RP (Apr. 21, 2015) at 23. Allen interrupted, stating, "Yes." RP (Apr. 21, 2015) at 23. The trial court then stated that "given the fact you are young, you have no disabilities, I think you're going to have the capacity to have some earnings and I will impose the requested financial obligations by the State," including "the drug fine." RP (Apr. 21, 2015) at 23-24.

Defense counsel once again argued that there was no authority allowing the trial court to split the drug fine between OPNET and the drug court. Although the trial court had originally stated that it was not waiving the $1,000 drug fine and that it was going to split this fine between OPNET and the drug court, when defense counsel argued that there was no authority allowing the

trial court to split the drug fine,[7] the trial court then stated it was "waiving the [drug] fine so that it does split between Drug Court and OPNET." RP (Apr. 21, 2015) at 27.

The trial court sentenced Allen to concurrent 30-day sentences on the two counts and converted the sentences to 240 hours of community service. The trial court also ordered that Allen be evaluated for chemical dependence and participate in drug treatment if it was recommended. The trial court imposed up to 12 months of community custody if drug treatment was ordered and up to 6 months of community custody if drug treatment was not ordered.

The trial court imposed $2,300 in LFOs: (1) a $500 victim assessment fee, (2) a $200 criminal filing fee, (3) $500 for her court-appointed attorney, (4) a $100 DNA collection fee, (5) a $500 contribution to the "[d]rug enforcement fund . . . to OPNET," and (6) $500 in "[o]ther fine[s] or costs for: [Drug Court Program]." CP at 21. Although the judgment and sentence includes lines where the trial court could have awarded (1) the drug fine under chapter 69.50 RCW, (2) a crime lab fee, and (3) a "[s]tatutory assessment" to the "[d]rug enforcement fund of [OPNET]," the trial court left these lines blank. CP at 22. The trial court ordered Allen to pay $40 a month starting July 2015.

Allen appeals her LFOs.

## ANALYSIS

### I. STANDARD OF REVIEW

As stated in *State v. Clark*,

Appellate courts review a decision on whether to impose LFOs for abuse of discretion. *State v. Baldwin*, 63 Wn. App. 303, 312, 818 P.2d 1116[, 837 P.2d 646]

---

[7] Defense counsel appears to assert that other courts had accomplished this by awarding "restitution" to OPNET and the drug court.

(1991). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). The trial court's factual determination concerning a defendant's resources and ability to pay is reviewed under the "clearly erroneous" standard. *State v. Bertrand*, 165 Wn. App. 393, 403-04, 267 P.3d 511 (2011); *Baldwin*, 63 Wn. App. at 312.

191 Wn. App. 369, 372, 362 P.3d 309 (2015).

## II. OPNET DRUG ENFORCEMENT FUND AND DRUG COURT LFOS

Allen first argues that the $500 allocated to the drug enforcement fund for OPNET and the $500 in drug court costs were not authorized or supported by the record.[8] We agree that these LFOs were improper.

### A. OPNET DRUG ENFORCEMENT FUND CONTRIBUTION

Allen argues that the OPNET drug enforcement fund contribution was improper because there was no evidence that the amount imposed was commensurate with or related to the costs of investigation. We agree.

A trial court may order payment of drug enforcement fund contributions as part of a defendant's LFOs. *State v. Hunter*, 102 Wn. App. 630, 635, 9 P.3d 872 (2000). The amount of the contribution must, however, be based on the costs of the investigation. *Hunter*, 102 Wn. App. at 639.

---

[8] It is not entirely clear from the record whether the trial court intended to impose a $500 drug enforcement fund contribution and $500 in drug court costs or whether it intended to merely allocate a $1,000 drug fine (RCW 69.50.430(1)). But because the judgment and sentence does not include a drug fine and, instead, unambiguously states that the trial court was imposing a drug enforcement fund contribution and drug court costs, we assume that the trial court was not merely attempting to allocate the drug fine. *State v. Hescock*, 98 Wn. App. 600, 606, 989 P.2d 1251 (1999) (use of trial court's oral ruling is limited to interpreting an ambiguous written ruling; when a trial court's written ruling is unambiguous, we may not turn to the trial court's oral ruling).

In *Hunter*, although the record did not contain specific evidence substantiating the costs of the investigation leading to the defendant's drug charges, the trial court stated on the record that it was "'obvious from the Court's review of the record here that substantial amounts of money were necessary to investigate and ultimately charge and convict Mr. Hunter here.'" 102 Wn. App. at 633. Division One of this court approved the drug enforcement fund contribution after determining that despite the lack of specific information about the investigatory costs in the record, the trial court had apparently considered those costs. *Hunter*, 102 Wn. App. at 641. Division One also noted that its decision was based, in part, on the fact that the trial court "did not have the benefit of [Division One's] interpretation of the statute" requiring that the amount of the drug enforcement fund contribution be based on the costs of the investigation when it imposed this obligation. *Hunter*, 102 Wn. App. at 641.

The drug charges in *Hunter* appear to have been the result of an in-depth drug investigation by a local drug task force.[9] Here, in contrast, the drugs were inadvertently discovered during the investigation of a property crime, there is no suggestion in the record that OPNET ever investigated Allen, and the trial court never commented about any investigatory costs.

The State argues that the following costs were related to the investigation of a drug crime: (1) the officer's time to question and search the suspect, (2) field testing and processing the evidence, (3) forensic testing,[10] (4) documentation, and (5) prosecution. But the record does not

---

[9] Hunter pleaded guilty to delivery of methamphetamine, delivery of cocaine, and unlawful possession of a firearm. *Hunter*, 102 Wn. App. at 632. There are, however, no other factual details regarding the offenses or the investigation in the *Hunter* opinion.

[10] We note that the trial court could have imposed a separate LFO to recoup any crime lab fee.

contain any evidence about these costs, there is nothing in the record showing that any of these possible costs were incurred by OPNET, and the trial court never recognized that there were any significant investigatory costs.

Given the absence of any evidence of an OPNET drug investigation or related costs, the trial court abused its discretion when it imposed the OPNET drug enforcement fund contribution.

## B. DRUG COURT COSTS

Allen further argues that the drug court costs were improper. She asserts that this cost is not authorized under RCW 9.94A.030(31).

RCW 9.94A.030(31) is a definitional statute that provides in part,

"Legal financial obligation" means a sum of money that is ordered by a superior court of the state of Washington for legal financial obligations which may include restitution to the victim, statutorily imposed crime victims' compensation fees as assessed pursuant to RCW 7.68.035, *court costs*, *county or interlocal drug funds*, court-appointed attorneys' fees, and costs of defense, fines, and any other financial obligation that is assessed to the offender as a result of a felony conviction.

RCW 9.94A.030(31) includes court costs and county or interlocal drug funds in the definition of LFOs and, arguably, drug court costs could be construed as either court costs or one of the entities entitled to benefit from a county or interlocal drug fund. Although *Hunter* suggests that this is sufficient to authorize the trial court to impose such LFOs,[11] it also holds that any such costs must be related to expenses or costs actually incurred. 102 Wn. App. at 639. Again, because there is nothing in the record showing that Allen incurred any drug court costs, the trial court abused its discretion in imposing these costs.

---

[11] In *Hunter*, Division One held that because an earlier version of RCW 9.94A.030(31) included "county or interlocal drug funds" in the definition of an LFO, that was sufficient to allow the trial court to require the defendant to contribute to such a fund. 102 Wn. App. at 635.

### III. ABILITY TO PAY

Allen next argues that the trial court erred when it found that she had the current or future ability to pay LFOs. We agree.

In *Blazina*,[12] our Supreme Court held that not only must the trial court make an individualized inquiry into the defendant's current and future ability to pay LFOs before imposing them, but that "[t]his inquiry also requires the court to consider important factors, such as incarceration and a defendant's other debts, including restitution, when determining a defendant's ability to pay." 182 Wn.2d at 839. Here, although the trial court inquired into Allen's education, past employment, and potential future ability to work, it did not inquire about Allen's broader financial status, such as whether she had any debt or child care expenses. Without understanding Allen's broader financial status, there was no way the trial court could determine that she would have the ability to pay LFOs even if she was capable of earning some income in the future. We hold that the trial court's inquiry was inadequate to support the imposition of LFOs.

### CONCLUSION

Because the trial court abused its discretion in imposing the OPNET drug enforcement fund contribution and the drug court costs and failed to conduct an adequate inquiry into Allen's current and future ability to pay LFOs, we reverse and remand this matter to the trial court to strike the OPNET drug enforcement fund contribution and drug court costs and to reexamine

---

[12] Our Supreme Court issued *Blazina* on March 12, 2015; Allen was sentenced on April 21, 2015. Thus, the trial court had the benefit of *Blazina* when it imposed the LFOs.

No. 47487-5-II

Allen's current and future ability to pay the remaining LFOs as required under *Blazina*. Because Allen is the prevailing party on appeal, the State is not entitled to appellate costs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

BJORGEN, C.J.

MAXA, J.

10