IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

                Respondent,

v.

TIANA ROSE WOOD-SIMS,

                Appellant.

No. 84075-4-I

DIVISION ONE

UNPUBLISHED OPINION

COBURN, J. — Tiana Rose Wood-Sims pleaded guilty to an amended charge of felony murder in the second degree under RCW 9A.32.050(1)(b) based on her accomplice liability for theft in the first degree. She now appeals her conviction, contending that felony murder in the second degree based on accomplice liability is an unconstitutional violation of due process and cruel punishment protections.[1] Alternatively, she appeals her sentencing, contending that the standard sentencing range for felony murder in the second degree is unconstitutional and the trial court abused its discretion by refusing to consider her request for an exceptional sentence. We disagree and affirm the conviction and sentencing.

---

[1] Because Wood-Sims in her reply brief withdraws her initially briefed challenge to the sufficiency of her guilty plea, we do not address this argument.

FACTS

In March 2014 Wood-Sims was charged with felony murder in the first degree for the death of Latasha Walker. See RCW 9A.32.030(1)(c). The predicate felony was robbery in the first degree. In August 2015 Wood-Sims pleaded guilty to the amended charge of felony murder in the second degree pursuant to plea negotiations. See RCW 9A.32.050(1)(b). The predicate felony was theft in the first degree.

In her statement of defendant on plea of guilty, Wood-Sims admitted on June 3, 2013 she "participated in arranging for Corey Mann, Gary Sanders, and Michael Galloway to commit a theft in the first degree from my friend Latasha Walker at her home." Wood-Sims told Mann where Walker's home was and that he could find $7,000 and pills in Walker's bedroom dresser. Wood-Sims admitted she was in contact with Mann throughout the day of the crime while she was with the victim.

Wood-Sims' plea statement continues:

When Latasha and I arrived back.at her apartment, Corey Mann, Gary Sanders, and Michael Galloway came to Latasha's apartment door. I pretended that I did not know why they were there, and I asked Latasha if it was OK to let them in. She was fooled and said OK, and I let them inside. Latasha was in her bedroom. All three men eventually went into Latasha's bedroom and I stayed in the living room. I knew they were looking for her money and pills to steal from her in her bedroom. I heard noises like things being knocked around in the room, and I heard Latasha call for me to help her. I did not help her. I did not go in the bedroom. While in the bedroom the men stole hats, a computer, some DVDs, a cell phone, and jewelry from Latasha's person. Corey Mann or one of the others took my cell phone too, to make it look like I was a victim of the crime.

....

I helped arrange and I assisted Corey Mann, Gary Sanders, and Michael Galloway so that they could carry out a theft in the first degree of Latasha Walker. I was to receive a portion of the proceeds from the theft. During the theft, while the men were in the bedroom, at least one of the men

2

assaulted Latasha. Latasha died as a result of the injuries she received during this theft which I helped accomplish.

Galloway pleaded guilty to murder in the second degree in April 2015. Sanders and Mann were convicted of murder in the first degree in March 2016. Wood-Sim's plea agreement also incorporated the State's probable cause statement for the purpose of sentencing. According to the statement, Wood-Sims is Mann's cousin. On the day of the crime, Mann told Galloway his cousin texted him "it's ready" before Galloway, Mann, and Sanders went to Walker's apartment. Cell phone records showed that Wood-Sims and Mann communicated 62 times on the day of the crime, with their communication ceasing at the time of the crime.

In March 2016 Wood-Sims requested an exceptional mitigated sentence "at the bottom of the standard range [of 123 to 220 months] or below that range." The State requested Wood-Sims be sentenced at the standard range maximum of 220 months. During the sentencing hearing, the trial court acknowledged "[t]here can be an argument for below the [sentencing] range" but rejected Wood-Sims' argument. The trial court stated that "the difficulty with the crime of felony murder is that no one ever goes into a felony planning on murdering someone." "Of course the death was not intended. That's not the basis for reducing the sentence." The court looked at the issue of sentencing proportionality in Wood-Sims' case and although it initially had questions about her culpability the court explained:

> ... I continued to read, and quite frankly, I think that, but for Ms. Wood-Sims' actions, no one would be here; that she was the person that initiated, that caused ... this felony to occur and the death to occur, and without her Latasha would be alive today.

3

The trial court differentiated Wood-Sims' crime from other felony murders where a defendant brings a gun and "it is anticipated that a deadly weapon is going to be at least shown," which can result in someone being shot. However, the trial court stated if Wood-Sims "had just not opened" the apartment door then "maybe, all through that intent, we would not be here today, but she made the choice to do that." "Wood-Sims' culpability is higher ... because she is the instigator of the felony that caused this." "I don't think she deserves the low end of the sentence because she instigated this; she is the cause of why we are here." The trial court also stated as part of its sentencing decision that "Wood-Sims could have intervened" while Walker was being attacked.

The court denied Wood-Sims' motion for an exceptional sentence and sentenced her to "a mid-range sentence of 175 [months]" as "proportionate to the sentencing guidelines." Wood-Sims appeals.[2]

DISCUSSION

Felony Murder

A. *Due Process and Police Powers*

Relying on State v. Blake, 197 Wn.2d 170, 481 P.3d 521 (2021), Wood-Sims contends the absence of a homicidal mens rea within the felony murder in the second degree statute exceeds state police powers in violation of due process. We disagree.

"[T]he State's police power is limited by the due process clause or 'by constitutional protection afforded certain personal liberties.'" Id. at 179 (quoting State v. Talley, 122 Wn.2d 192, 199, 858 P.2d 217 (1993)). In Blake, our state Supreme Court

---

[2] Wood-Sims filed her untimely notice of appeal in May 2022. After reviewing declarations from Wood-Sims and her attorney who represented her at sentencing, this court's commissioner granted Wood-Sims' request to enlarge the time to file an appeal.

reiterated that a state's police power, as "'an essential element of the power to govern,'" empowers it to restrain harmful conduct. Id. at 177 (quoting Shea v. Olson, 185 Wn.2d 143, 153, 53 P.2d 615 (1936)). A state's police power is only restricted by the requirements that it must reasonably tend to rectify "'some evil,'" or promote the state's interest, and that it be employed within constitutional bounds. Id. (quoting Shea, 185 Wn.2d at 153). The Blake court held that while the state may create strict liability crimes, it may not criminalize "wholly innocent and passive nonconduct." Id. at 193. "[E]ntirely passive" conduct is not "calculated to harm." Id. at 180-81; City of Seattle v. Pullman, 82 Wn.2d 794, 795, 514 P.2d 1059 (1973).

Wood-Sims does not argue that felony murder in the second degree is a strict liability crime that criminalizes wholly passive conduct. She concedes that, under the felony murder rule, culpability is based on the predicate felony conduct. See State v. Carter, 154 Wn.2d 71, 79, 109 P.3d 823 (2005). Instead, Wood-Sims misinterprets Blake as applying to a "nonkiller participant" whose mens rea is only based on the predicate felony. See id.

In fact, the Blake court confirmed its holding did "nothing ... to disturb the legislature's power to enact strict liability crimes." 197 Wn.2d at 193. A state may opt to create a strict liability crime, or "'public welfare offense,'" based on various nonexclusive factors, including "the seriousness of the harm to the public" or the importance of "stamp[ing] out harmful conduct at all costs." State v. Bash, 130 Wn.2d 594, 605-06, 925 P.2d 978 (1996) (quoting 1 WAYNE R. LaFAVE & AUSTIN W. SCOTT, SUBSTANTIVE CRIMINAL LAW § 3.8, at 341-44 (1986)). Rather, in its voiding of a simple drug possession statute that made it "unlawful for any person to possess a controlled

substance," the court acknowledged the statute allowed Blake to be convicted merely for wearing jeans with pockets. Blake, 197 Wn.2d at 176, 195. Conversely, "[v]alid strict liability crimes require that the defendant actually perform some conduct." Id. at 195.

Our state Supreme Court has held that "[b]ecause Washington's felony murder statute clearly holds felons strictly responsible for any deaths occurring under the conditions specified by the statute, the issue is whether … [the defendant's] actions fall within the statute." State v. Dennison, 115 Wn.2d 609, 616, 801 P.2d 193 (1990). Thus, the predicate felony constitutes the necessary criminal conduct for the strict liability crime of felony murder. See RCW 9A.32.030(1)(c), .050(1)(b).

In regard to mens rea, Wood-Sims also cites State v. Cronin for the principle that criminal liability should be imposed for accomplices only if the accomplice has general knowledge of "the crime" for which they are charged. 142 Wn.2d 568, 579, 14 P.3d 752 (2000). But Cronin is inapposite. The Cronin court addressed jury instructions for co-defendant's charges for assault and premeditated murder in the first degree based on accomplice liability. Id. at 580-81. The court held that each jury instruction departed from the accomplice liability statute, RCW 9A.08.020, by allowing the jury to convict if they found the defendant knew his actions would promote or facilitate "a crime" as opposed to "the crime" for which he was specifically charged. Id. at 580-82, 586 (emphasis added).

In charging felony murder in the second degree, the government is not required to prove intent to kill or any mental element in regard to the actual killing. State v. Gamble, 154 Wn.2d 457, 468, 114 P.3d 646 (2005). Rather, as a strict liability crime, the felony murder rule aims to deter offenders from accidentally, negligently, or

recklessly causing deaths by holding them accountable for such killings. Dennison, 115 Wn.2d at 615-16; Bowman v. State, 162 Wn.2d 325, 333, 172 P.3d 681 (2007). "The state of mind necessary to prove a felony murder is the same state of mind necessary to prove the underlying felony." State v. Osborne, 102 Wn.2d 87, 93, 684 P.2d 683 (1984); see also State v. Carter, 119 Wn. App. 221, 231, 79 P.3d 1168 (2003) (stating felony murder "is a strict liability crime for which the only mens rea that need be shown is that necessary to prove the predicate felony"), aff'd, 154 Wn.2d 71 (2005) (citing State v. Roberts, 142 Wn.2d 471, 511 n.14, 14 P.3d 713 (2000)). Therefore, under the accomplice statute, the underlying offense for felony murder is "the crime" a defendant commits "with knowledge" that their conduct "will promote or facilitate" its commission. RCW 9A.08.020, see RCW 9A.32.030(c), .050(1)(b). "The predicate felony merely substitutes for the mental state the State is otherwise required to prove" to establish murder culpability.[3] State v. Kosewicz, 174 Wn.2d 683, 692, 278 P.3d 184 (2012).

In the instant case, the underlying felony to Wood-Sims' felony murder conviction is theft in the first degree wherein there must be intent to deprive the victim of property or services. RCW 9A.56.020(1). Because Wood-Sims does not otherwise challenge her accomplice liability for the underlying offense of theft in the first degree, her argument necessarily fails.

On the issue of mens rea, Wood-Sims also argues the statutory affirmative defense to felony murder in the second degree improperly shifts the burden of proof in violation of due process by requiring the defendant to prove by preponderance of the evidence that the defendant "[h]ad no reasonable grounds to believe that any other

---

[3] Wood-Sims concedes this point in her reply brief.

7

participant intended to engage in conduct likely to result in death or serious physical injury."[4] RCW 9A.32.050(1)(b)(iv).

However, "[t]he State is foreclosed from shifting the burden of proof to the defendant only 'when an affirmative defense ... negate[s] an element of the crime.'" Smith v. United States, 568 U.S. 106, 110, 133 S. Ct. 714, 184 L. Ed. 2d 570 (2013) (quoting Martin v. Ohio, 480 U.S. 228, 237, 107 S. Ct. 1098, 94 L. Ed. 2d 267 (1987) (Powell, J., dissenting)). As discussed above, felony murder is a strict liability crime that does not require its own mental element separate from the mens rea required by the predicate felony. The "allocation of the burden of proof raises a due process question only if the absence of an essential element of the crime is an affirmative defense." State v. Peyton, 29 Wn. App. 701, 719, 630 P.2d 1362 (1981); see State v. Gilcrist, 25 Wn. App. 327, 328-29, 606 P.2d 716 (1980). Because "Washington courts have long held that the underlying elements of the predicate felony are not essential elements of felony murder," Kosewicz, 174 Wn.2d at 692, the statutory defense to felony murder in the second degree does not fall into that category.[5] See also Blake, 197 Wn.2d at 188

---

[4] The statutory affirmative defense to felony murder in the second degree requires the defendant to prove four elements by preponderance of evidence; that the defendant:

> (i) Did not commit the homicidal act or in any way solicit, request, command, importune, cause, or aid the commission thereof; and (ii) Was not armed with a deadly weapon, or any instrument, article, or substance readily capable of causing death or serious physical injury; and (iii) Had no reasonable grounds to believe that any other participant was armed with such a weapon, instrument, article, or substance; and (iv) Had no reasonable grounds to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.

RCW 9A.32.050(1)(b).

[5] Wood-Sims' briefing also comments that the statutory defense under RCW 9A.32.050(1)(b) "can be defeated if any participant is armed with a weapon, a constitutionally protected right." Wood-Sims does not include authority to support this particular constitutional argument, nor does she present a substantive argument other than observing an asserted

(holding that because the simple possession statute lacked a mens rea element, "placing the burden to prove unwitting possession on the defendant does not 'negate' any existing element of the crime").

For the foregoing reasons, we conclude that felony murder in the second degree under RCW 9A.32.050 does not violate due process.

*B.  Cruel Punishment*

Wood-Sims next contends that the application of the felony murder rule to accomplices of an underlying non-violent predicate felony is unconstitutional under the "evolving standards of decency" and the state constitution prohibiting cruel punishment. Wood-Sims argues that accomplices to a non-violent offense should be categorically exempt from the felony murder rule.

This court reviews a statute's constitutionality de novo. State v. Reynolds, 2 Wn.3d 195, 201, 535 P.3d 427 (2023). Article I, section 14 of the Washington Constitution states, "Excessive bail shall not be required, excessive fines imposed, nor cruel punishment inflicted." Our state Supreme Court has "repeated[ly] recogni[zed] that the Washington State Constitution's cruel punishment clause often provides greater protection than the Eighth Amendment." Roberts, 142 Wn.2d at 506. Both the federal and state cruel punishment protections "categorically bar sentences that are disproportionate to the crime of conviction and the culpability of the offender." Reynolds, 2 Wn.3d at 203.

Traditionally, the test to determine if a sentence is grossly disproportionate, the Fain test, requires a consideration of the nature of the offense, the legislative purpose

conflict. We do not address undeveloped constitutional arguments. King County Dep't of Adult & Juv. Det. v. Parmelee, 162 Wn. App. 337, 353, 254 P.3d 927 (2011).

behind the statute, the punishment the defendant would have received in other jurisdictions, and the punishment meted out for other offenses in the same jurisdiction. State v. Fain, 94 Wn.2d 387, 397, 617 P.2d 720 (1980); see also State v. Bassett, 192 Wn.2d 67, 84-85, 428 P.3d 343 (2018) (discussing the Fain test). But our state Supreme Court has identified a different test to determine whether a sentence is categorically unconstitutional. The categorical bar test under State v. Bassett, 192 Wn.2d 67, requires a court to "address (1) whether there are 'objective indicia of a national consensus against the sentencing practice' and (2) whether our independent judgment, based on controlling precedent and our understanding and interpretation of the cruel punishment provision's text, history, and purpose, weighs against the sentencing practice." Reynolds, 2 Wn.3d at 203-04 (citing Bassett, 192 Wn.2d at 83).

The first step requires a review of objective evidence of society's standards as reflected in states' legislation and practice. Bassett, 192 Wn.2d at 85. The question is "not so much the number of these States that is significant, but the consistency of the direction of change." Id. at 86 (quoting Atkins v. Virginia, 536 U.S. 304, 315, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002)); see also Graham v. Florida, 560 U.S. 48, 62, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010) ("Actual sentencing practices are an important part of the Court's inquiry into consensus."). The second step requires a "consideration of 'the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question' and 'whether the challenged sentencing practice serves legitimate penological goals.'" Bassett, 192 Wn.2d at 87 (quoting Graham, 560 U.S. at 67).

Our state Supreme Court has recently confirmed that although a "showing of a national consensus is entitled to great weight," it does not on its own establish a punishment as cruel. Reynolds, 2 Wn.3d at 207; State v. Moretti, 193 Wn.2d 809, 823, 446 P.3d 609 (2019). Wood-Sims only addresses the first national consensus step of the Bassett inquiry and fails to explain how our state's "precedent, goals, history, and values" supports a categorical bar of felony murder based on accomplice liability for a non-violent offense.[6] See Reynolds, 2 Wn.3d at 207. Without sufficient argument before us, we are unable to apply our independent judgment under the Bassett test. See id. at 202-03, 207-10 (analyzing defendant's arguments regarding juveniles' reduced culpability and reduced retributive justification for life without possibility of parole sentencing under three strikes rule). Thus, we do not address the merits of Wood-Sims' national consensus argument.[7]

At oral argument, Wood-Sims appeared to back away from her reliance on Bassett, and instead, for the first time asserted that the more appropriate analytical lens is provided by State v. Gregory, 192 Wn.2d 1, 18-19, 427 P.3d 621 (2018), wherein our state Supreme Court struck down the death penalty as unconstitutional under article I, section 14.[8] Contrary to RAP 10.3(a)(6), Wood-Sims did not cite to Gregory in her

---

[6] Notably, Wood-Sims also does not acknowledge in her cruel punishment argument the existence of Washington's statutory affirmative defense to felony murder in the second degree. See RCW 9A.32.050(b).

[7] The parties appear to agree that the majority of states criminalize felony murder, with only five states having abolished the rule. See LINDSAY TURNER, WILDER RSCH., TASK FORCE ON AIDING AND ABETTING FELONY MURDER: REPORT TO THE MINNESOTA LEGISLATURE 28 (Feb. 1, 2022), https://www.wilder.org/sites/default/files/imports/AAFM-LegislativeReport_ACCESSIBLE_2-22.pdf [https://perma.cc/PZ3J-P729].

Wood-Sims cites to a task force report to the Minnesota legislature in 2022 to argue that six states impose additional requirements—that do not exist under Washington law—that must be met to support a felony murder conviction "of any degree." Id. at 30-31.

[8] At oral argument, Wood-Sims analogized the Gregory court's analysis of the racial disparities involved in the imposition of the death penalty to Washington state studies ostensibly

briefing, which would have allowed the State to respond and this court to consider a properly briefed argument. We refrain from addressing constitutional arguments when they have not been adequately briefed. City of Spokane v. Taxpayers of City of Spokane, 111 Wn.2d 91, 96, 758 P.2d 480 (1988); see Pub. Hosp. Dist. No. 1 of King County v. Univ. of Wash., 182 Wn. App. 34, 49, 327 P.3d 1281 (2014) ("'[N]aked castings into the constitutional seas are not sufficient to command judicial consideration and discussion.'") (alteration in original) (quoting State v. Johnson, 179 Wn.2d 534, 558, 315 P.3d 1090 (2014)). Because Wood-Sims has not presented adequate argument to allow review of her cruel punishment challenge, her claim necessarily fails.

## Sentencing Range

Alternatively, Wood-Sims contends that the standard sentencing range for felony murder in the second degree is unconstitutional or should otherwise be limited when the predicate felony is based on accomplice liability for a non-violent offense.

The State argues Wood-Sims' contentions conflict with the mandates of the Sentencing Reform Act (SRA) of 1981, chapter 9.94A RCW. Our legislature's primary purpose in enacting the SRA was to implement a determinate system with a focus on "'proportionality, equality and justice'" rather than rehabilitation. State v. Garcia-

showing a racial disparity in felony murder convictions. Wash. Court of Appeals oral argument, State v. Woods-Sims, No. 84075-4-I (Nov. 11, 2024), at 3 min., 38 sec. through 4 min., 10 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2024111132/?eventID=2024111132; see Gregory, 192 Wn.2d at 19-21. Notably, Wood-Sims offers additional commentary in her briefing regarding criticism of the felony murder rule, including that the United States is the only common law country to maintain the rule, and that recent studies have demonstrated a connection between the felony murder rule and racially disproportionate outcomes as well as the rule's common application to adolescent defendants. Our ruling is not a comment on the validity of such purported concerns. Rather, because Wood-Sims does not explain in her briefing how these considerations fit within or apply to this court's mandated Bassett framework, or any other constitutional framework, we do not address them.

<u>Martinez</u>, 88 Wn. App. 322, 327, 944 P.2d 1104 (1997) (quoting <u>State v. Barnes</u>, 117 Wn.2d 701, 710, 818 P.2d 1088 (1991)). "By limiting judges' discretion to sentence a defendant outside the standard range and precluding appeals regarding the length of a standard range sentence, the Legislature sought to ensure that punishment for each criminal offense would be commensurate with that imposed on others with similar criminal histories committing a similar offense." <u>Id.</u> at 328 (citing RCW 9.94A.010(3)). Even so, the SRA provides that those charged with felony murder in the second degree may pursue an affirmative defense under RCW 9A.32.050(1)(b), and those sentenced for committing felony murder in the second degree may seek an exceptional sentence below the standard range where mitigating circumstances are established by a preponderance of the evidence, RCW 9.94A.535(1).

Contrary to the State's assertion, the SRA only bars appellate review of the convicted individual's challenges to their sentencing <u>duration</u> when it is within the standard range. <u>Garcia-Martinez</u>, 88 Wn. App. at 329. A defendant may still appeal their sentence as a challenge to the constitutionality of its basis. <u>Id.</u>; <u>see also</u> <u>State v. McNeair</u>, 88 Wn. App. 331, 337-38, 944 P.2d 1099 (1997) (rejecting argument that a defendant may not challenge the constitutionality of sentencing statute). However, the defendant shoulders the burden to overcome the presumption that a sentencing range is constitutional. <u>Garcia-Martinez</u>, 88 Wn. App. at 329. "It is the Legislature's prerogative to determine the presumptive sentence ranges for each crime." <u>Id.</u>

Wood-Sims' contention is apparently premised on a majority of states reportedly placing limits on liability or punishment for aiding and abetting felony murder by statute or case law. See TURNER, <u>supra</u>, at 31. Wood-Sims cites to the task force report to the

13

Minnesota legislature in 2022. But the report does not specify sentencing ranges in its discussion of "maximum allowed liability" for aiding and abetting felony murder[9] and Wood-Sims does not otherwise explain how such states' ostensible practices establish the unconstitutionality of Washington's sentencing range for felony murder in the second degree under the SRA. Id.; see RCW 9.94A.505(2)(a)(i), .515 (designating murder in the second degree as seriousness level XIV for the purposes of sentencing under SRA), .510 (stating sentencing range of 123 to 220 months for offender score of zero under seriousness level XIV). Instead, the one paragraph in Wood-Sims' opening brief devoted to her sentencing range argument is devoid of authority. Because Wood-Sims fails to offer authority to specify the grounds of, or precedent for, the unconstitutionality of the standard sentencing range for RCW 9A.32.050(1)(b), she has not met her burden to overcome the presumption that her sentencing range is constitutional.

Denial of Exceptional Sentence

Lastly, Wood-Sims contends the trial court did not meaningfully consider her exceptional sentence request. The State argues Wood-Sims may not appeal her "mid-range" sentence of 175 months because it is within the standard 123 to 220-month range. See RCW 9.94A.585(1).

---

[9] The task force report seems to use "maximum liability" to include, depending on the state, the level of offense or punishment a defendant may receive for aiding and abetting felony murder. TURNER, supra, at 31. The report states that six states have mental state or act requirements for a defendant to be liable for felony murder in the first degree for aiding and abetting felony murder. Id. According to the report, 31 states require a predicate felony be part of a statutorily enumerated list for a defendant to be, depending on the state, liable for felony murder in the first degree, liable for felony murder in the second degree, or sentenced to capital murder for aiding and abetting felony murder. Id. "In other[] [states], the predicate felony being part of this statutorily enumerated list will be considered as an aggravating factor at sentencing." Id.

As referenced above, "[t]he Legislature by establishing presumptive sentence ranges has structured the trial court's discretion." State v. Ammons, 105 Wn.2d 175, 182-83, 713 P.2d 719 (1986); see State v. Hunter, 102 Wn. App. 630, 636, 9 P.3d 872 (2000); State v. Murray, 118 Wn. App. 518, 522, 77 P.3d 1188 (2003); RCW 9.94A.010, .505(2)(a)(i), .510. "So long as a court imposes a sentence within the presumptive range and a defendant has not alleged that any mitigating factors exist, a court cannot be said to have abused its discretion, since it has neither exercised nor refused to exercise discretion." Garcia-Martinez, 88 Wn. App. at 329. Therefore, "[w]hen the sentence given is within the presumptive sentence range[,] … as a matter of law there can be no abuse of discretion and there is no right to appeal that aspect." Ammons, 105 Wn.2d at 183.

However, an appellant is not barred from challenging the procedure by which a trial court imposed a sentence within the standard range. Id. "While no defendant is entitled to an exceptional sentence below the standard range, every defendant is entitled to ask the trial court to consider such a sentence and to have the alternative actually considered." State v. Grayson, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005). "When a trial court is called on to make a discretionary sentencing decision, the court must meaningfully consider the request in accordance with the applicable law." State v. McFarland, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017).

An appellate court reviews a trial court's denial of a defendant's request for an exceptional sentence below the standard range for an abuse of discretion. See Grayson, 154 Wn.2d at 342. In this context, a court has abused its discretion if it "refused to exercise [such] discretion at all or … relied on an impermissible basis for

refusing to impose an exceptional sentence below the standard range." Garcia-Martinez, 88 Wn. App. at 330 (emphasis added).

A trial court "refuses to exercise its discretion if it refuses categorically to impose an exceptional sentence below the standard range under any circumstances; i.e., it takes the position that it will never impose a sentence below the standard range." Id. Additionally, a court's erroneous belief that it is limited to a standard range sentence is an improper use of a trial court's sentencing discretion. McFarland, 189 Wn.2d at 55-56. A trial court relies on an impermissible basis if it, for example, decides "that no drug dealer should get an exceptional sentence" below the standard range or the court "refuses to consider the request because of the defendant's race, sex or religion." Garcia-Martinez, 88 Wn. App. at 330.

In the instant appeal, Wood-Sims does not seem to suggest that the trial court relied on an impermissible basis when it denied her an exceptional sentence. Rather, she argues the trial court refused to exercise its discretion in considering an exceptional sentence based on her purported lesser culpability as an accomplice to a non-violent predicate offense. Wood-Sims does not cite to the record to support her assertion of the trial court's alleged categorical refusal and instead asks this court to conclude that the facts conclusively show Wood-Sims' lesser culpability.

The record, however, shows the trial court considered Wood-Sims' request for an exceptional sentence and declined to grant it based on its assessment of Wood-Sims' level of culpability. This by definition is an exercise of the trial court's discretion. See id. at 330-31. "[A] trial court that has considered the facts and has concluded that there is

16

no basis for an exceptional sentence has exercised its discretion, and the defendant may not appeal that ruling." Id. at 330.

At Wood-Sims' sentencing, the trial court explained its initial reaction contained questions about Wood-Sims' culpability but, after reviewing the information, the court concluded "but for" Wood-Sims' conduct, such as opening the victim's apartment door, "no one would be here." Additionally, the trial court considered Wood-Sims' lack of intervention while the events causing the victim's death unfolded.

The trial court exercised its discretion by considering the facts and concluding that an exceptional sentence was not appropriate.

We affirm.

_Coburn, J._

WE CONCUR:

_Feldman, J._          _Mann, J._