IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | No. 74436-4-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JANET L. BAUML, | ) | |
| | ) | |
| Appellant. | ) | FILED: October 30, 2017 |
| | ) | |

LEACH, J. — Janet Bauml appeals her conviction for nine counts of theft in the first and second degree. She challenges the sufficiency of the evidence to convict her and the trial court's refusal to give her proposed jury instruction defining "by color or aid of deception." She also claims that the trial court categorically refused to impose a first-time offender waiver. Sufficient evidence supports the jury's verdict, and the trial court provided the jury an accurate statement of the law that allowed Bauml to present her defense. Finally, the trial judge properly exercised her discretion, based on the facts of the case, when refusing to apply the waiver. Thus, we affirm.

## BACKGROUND

Janet Bauml met Mariana Cooper in 2006 at Cooper's friend's home in Redmond, Washington. Cooper was 77 years old at the time. Soon, Bauml began visiting Cooper regularly. Cooper learned that Bauml was a single mother

with a 12-year-old daughter and a 16-year-old son. Bauml told Cooper that she ran a business called Organizational Specialist but was frequently concerned about having enough money to pay for rent and utilities. By 2007, Cooper and Bauml were close friends. Around that time, Cooper asked Bauml to help her with her accounting and bill paying. Cooper's family did not live nearby, and Cooper trusted Bauml with her finances.[1]

Bauml, in 2008, first asked Cooper for money. Cooper characterizes Bauml's first receipt of money from her as a gift. She describes all other transfers of her money as loans. Bauml asked Cooper for money every few months from 2008 through 2011, and Cooper always agreed. Each time Bauml asked for money, she would appear serious and desperate. Cooper would ask, "[D]on't you have anyone else?" and Bauml would say no.

Bauml told Cooper she needed money for rent and utilities, for her son's medical care related to his drug addiction, and for her own medical care. Cooper testified that she never specified the terms of the loans or documented them with a writing signed by Bauml because she trusted Bauml. Cooper funded the loans by taking cash advances on her credit cards, by taking out a reverse mortgage, which Bauml encouraged, and through her regular income from social security

---

[1] Cooper also asked Bauml to be the executor of her estate and granted her power of attorney for both her finances and health care, as well as put Bauml's name on her Bank of America account.

and a Boeing pension. Bauml repeatedly promised Cooper that she would reimburse her. Bauml assured Cooper she would be receiving money from various sources but never repaid Cooper. As a result, Cooper now lives in an assisted living facility. Her IRA (individual retirement account), worth $84,000, is her only remaining asset.

In 2012, Cooper told her granddaughter, Amy Lecoq, about the loans to Bauml, and they reported Bauml to the police. In total, Cooper loaned Bauml $217,887.57. The State criminally charged Bauml for $180,200.00 in transfers.[2]

The State charged Bauml with seven counts of theft in the first degree and five counts of theft in the second degree. A jury convicted Bauml of five counts of theft in the first degree and four counts of theft in the second degree. The jury found a major economic offense aggravator for each count. The jury could not reach a verdict on the other three counts.[3] The court sentenced Bauml to 43 months in prison and ordered her to pay $175,200 in restitution. Bauml appeals her conviction.

---

[2] The State did not charge all checks as crimes due to prosecutorial discretion and statute of limitations issues. The State charged checks amounting to $187,500, but that total includes the $7,300 in loans from a second alleged victim, Jeffrey Michell, who is connected to counts 11 and 12. The charges related to Cooper's checks amounted to $180,200.

[3] Jeffrey Michell, not Cooper, was the alleged victim in two of the three counts on which the jury could not reach a verdict.

## ANALYSIS

### I. Sufficiency of the Evidence

Bauml first challenges the sufficiency of the evidence to support her convictions. When reviewing a sufficiency challenge, an appellate court, viewing the evidence in the light most favorable to the State, asks whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.[4] Sufficient evidence must support every element of the charged offense.[5] The appellate court defers to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence.[6]

To find a defendant guilty of theft, either in the first or second degree, by means of deception, the jury must find, beyond a reasonable doubt, each of the following elements: (1) the defendant, by color or aid of deception, obtained control over the property of another person,[7] (2) the defendant intended to deprive that person of her property,[8] and (3) the property exceeded $5,000 in value for theft in the first degree[9] or $750 in value for theft in the second degree.[10]

---

[4] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).
[5] State v. Alvarez, 128 Wn.2d 1, 19, 904 P.2d 754 (1995).
[6] State v. Mehrabian, 175 Wn. App. 678, 699, 308 P.3d 660 (2013).
[7] RCW 9A.56.020(b).
[8] RCW 9A.56.020(b).
[9] RCW 9A.56.030(1)(a).
[10] RCW 9A.56.040(1)(a).

"By color or aid of deception" means that the deception contributed to the defendant's ability to obtain the property, but it does not need to be the sole means by which the defendant obtained the property.[11] "Deception" occurs when the defendant knowingly creates or confirms another's false impression that the defendant knows to be false, fails to correct another's impression that the defendant previously has created or confirmed, or promises performance that the defendant does not intend to perform or knows will not be performed.[12] The statute focuses on the false impression created rather than the falsity of any particular statement.[13]

Here, Bauml must show that no rational juror could have found her guilty beyond a reasonable doubt as to at least one element of each count of theft in the first or second degree. Bauml challenges the sufficiency of the evidence to prove two elements: (1) that she obtained control over Cooper's money by color or aid of deception and (2) that she intended to permanently deprive Cooper of the money. We hold that sufficient evidence supports both elements.

*A. Sufficient Evidence Shows Bauml Made Deceptive Statements, and Cooper Relied on Those Statements.*

First, Bauml challenges the sufficiency of the evidence to prove that she obtained control over Cooper's money by color or aid of deception. Bauml

---

[11] RCW 9A.56.010(4).
[12] RCW 9A.56.010(5)(a),(b),(e).
[13] Mehrabian, 175 Wn. App. at 700.

makes a twofold argument: she claims that (1) she did not deceive Cooper about her reasons for needing the money, and Cooper did not rely on those reasons in loaning her the money, and (2) she did not deceive Cooper about her intent to repay Cooper. We address each claim in turn.

The State provided ample evidence to support a rational juror finding beyond a reasonable doubt that Bauml deceived Cooper about the reasons she needed the money. The State's financial analyst, Becky Tyrell, provided extensive testimony about both Cooper's and Bauml's financial records. Tyrell traced the loans from Cooper's accounts to Bauml's and learned how Bauml spent a particular check or if Bauml made a cash withdrawal. Bauml spent the majority of Cooper's money by either debit or credit transactions. Although Tyrell could not account for most of Bauml's cash spending, her accounting of Bauml's expenditures clearly shows that on the whole, Bauml did not spend Cooper's money for the purposes she had represented to Cooper. For example, Tyrell testified that Bauml made a number of purchases at retail stores and for lodging in Oregon, spent Cooper's money on activities such as having her nails done, and paid off her own credit cards.

Bauml, however, represented to Cooper that she needed money for three primary purposes: (1) rent and utilities,[14] (2) her son Christopher's medical

---

[14] The State does not contest Bauml's genuine need for money for rent and utilities.

treatment, and (3) her own medical treatment. Bauml told Cooper that she did not have medical insurance. Thus, she needed money for Christopher's treatment and medication for drug addiction. She also claimed that she needed money for his legal affairs.

Christopher testified that he had been addicted to heroin and had, in fact, attended treatment. Christopher completed a rehabilitation program in 2009, but Bauml's debit or credit transaction history does not show any payment for this program. Christopher also sought treatment from various alternative medicine providers and counselors, some of whom he saw on a weekly basis for months. Bauml spent only $5,235 on these alternative providers, excluding potential spending with cash withdrawals, out of the $180,200 in transfers from Cooper that were criminally charged. Christopher testified that Bauml paid for his 2009 rehabilitation program and for his additional treatment and counseling. But he did not know the source of the payment funds. Although Bauml told Cooper she needed money for Christopher's medication, Christopher was not prescribed any medications to assist in his treatment. He purchased Suboxone off the street for a total of $300, which Bauml funded.

Similarly, Bauml told Cooper she needed money for Christopher's court-ordered treatment in response to a drug charge. Tyrell testified, however, that Bauml's records show she used only $4,500 to pay Russell Dawson, who

Christopher confirmed was his attorney. Christopher testified that he received a deferral that did not involve treatment.

Bauml also represented to Cooper that she needed money for her own imaging at the Polyclinic and vibrational psychology due to PTSD (posttraumatic stress disorder) caused by childhood trauma. But Tyrell did not find any payments to the Polyclinic from either Bauml's bank accounts or credit cards. Additionally, Bauml's Polyclinic records show that the Polyclinic treated her solely for hypothyroidism. Because Bauml spent a comparatively small amount of the total loans on the services for which she solicited money from Cooper, sufficient evidence shows that Bauml knowingly created a false impression and used it to deceive Cooper about the reasons she sought money from her.

Bauml also maintains that Cooper did not rely on the reasons she gave Cooper for needing the money. To support her claim, Bauml cites a portion of Cooper's testimony in which Cooper says that "all [Bauml] had to do was ask, and I'd give [the money] to her." But Cooper made this statement in the context of explaining the extent to which she trusted Bauml, so much that Cooper did not require an accounting of the loans. For example, Cooper also testified that she believed the reasons Bauml gave her for needing the money and never tried to verify her stories because she trusted her. Moreover, "by color or aid of deception" means that the deception only contributed to Cooper's decision to

loan Bauml money, not that it was the sole cause.[15] Substantial evidence shows that Cooper relied on Bauml's deceptive reasons for needing the money.

Bauml also challenges the sufficiency of the evidence to prove that she deceived Cooper about her intent to repay Cooper. She supports her claim by noting her repeated promises to reimburse Cooper. The evidence shows, however, that Bauml did not have the resources to repay Cooper.

Bauml worked for Nu Skin selling skin care products and in early 2011 told Cooper that she would be receiving close to $1 million due to an upcoming merger at Nu Skin, possibly as a result of an investment she had made. But in examining Bauml's financial records, Tyrell observed that from 2008-2012, Bauml made a total of $350 to $400 at Nu Skin. Moreover, there is no record of Bauml receiving a $1 million return on any investment in Nu Skin, nor is there evidence that Bauml had invested in Nu Skin or that there was a lucrative merger. Bauml told Cooper that she would also be receiving a settlement from a car accident, but her daughter Kathryn does not remember Bauml ever waiting on an insurance settlement.

Moreover, Bauml avoided Cooper when Cooper asked for repayment to pay for repairs on her roof in the summer of 2011. Cooper left messages on Bauml's phone but could not get in touch with her, even after speaking with

---

[15] RCW 9A.56.010(4).

Kathryn. Bauml attributed her absence to being in Canada and dropping her phone. But neither Kathryn nor Christopher remembers Bauml taking a trip in the summer or fall of 2011, nor do they remember Bauml losing or damaging her phone. Bauml did not repay any of the more than $200,000 she received from Cooper. From this evidence a reasonable juror could find that Bauml promised performance that she did not intend to perform or knew she could not perform and thus deceived Cooper when she promised to repay the loans.[16]

*B. Sufficient Evidence Shows Bauml Intended To Permanently Deprive Cooper of Her Money.*

Bauml also challenges the sufficiency of the evidence to prove that she intended to permanently deprive Cooper of her money. She contends that she always intended to repay Cooper, as shown by her repeated promises to do so. But Tyrell testified that from February of 2008 to January of 2012, Bauml received a total of $30,257.87 that did not come from Cooper, including a $15,000.00 inheritance. Thus, although Bauml had over $30,000.00 of her own, she never repaid Cooper any of the more than $200,000.00 she borrowed from Cooper. This evidence, together with Bauml's deception about her ability to

---

[16] Bauml does not contest that Cooper believed Bauml would repay her and thereby relied on Bauml's promise of repayment. Cooper attested that she would never have loaned Bauml the money if she had known that Bauml was not going to repay her because, as a result, she lost everything.

repay Cooper and Bauml's evasive behavior, provide sufficient evidence to prove that Bauml intended to permanently deprive Cooper of her money.

## II. Jury Instructions

Bauml next claims that the trial court deprived her of her Sixth Amendment right to present a defense by giving the pattern jury instruction defining "by color or aid of deception" instead of or in addition to her proposed instruction. An appellate court reviews de novo claimed errors of law in jury instructions.[17] Error is not considered prejudicial unless it affects or presumptively affects the outcome of trial.[18] Jury instructions satisfy the defendant's Sixth Amendment right to a fair trial[19] if, taken as a whole, they accurately inform the jury of the relevant law, are not misleading, and allow the defendant to argue his theory of the case.[20] A trial court has discretion in the wording of jury instructions.[21]

Bauml contends that the court's instruction defining "by color or aid of deception," Washington Pattern Jury Instruction 79.03,[22] did not allow her to argue her defense to the jury. WPIC 79.03 states, "By color or aid of deception means that the deception operated to bring about the obtaining of the property or

---

[17] State v. Kennard, 101 Wn. App. 533, 537, 6 P.3d 38 (2000).
[18] State v. Hoffman, 116 Wn.2d 51, 97, 804 P.2d 577 (1991).
[19] State v. Coristine, 177 Wn.2d 370, 375, 300 P.3d 400 (2013).
[20] State v. Redmond, 150 Wn.2d 489, 493, 78 P.3d 1001 (2003).
[21] Kennard, 101 Wn. App. at 537.
[22] 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 79.03, at 202 (4th ed. 2016) (WPIC).

services. It is not necessary that deception be the sole means of obtaining the property or services." WPIC 79.03 states almost verbatim the statutory definition of "by color or aid of deception"[23] and thus accurately represents the law. In addition, Bauml was able to argue her defense in closing argument. Bauml asserted that she did not deceive Cooper because her financial records do not represent her intentions and Cooper's few designations on the memo lines of the checks are not sufficiently detailed or complete to represent the purpose of the checks. Bauml was also able to emphasize that Cooper did not rely on her stated reasons for needing the money because Cooper said she need only ask and Cooper would give her money. The court's instruction satisfied Bauml's right to a fair trial because it informed the jury of the relevant law, was not misleading, and allowed Bauml to argue her theory of the case.

Bauml also asserts that the trial court's refusal to give her requested instruction, which she maintains accurately stated the law and effectively represented her defense, impermissibly infringed on her right to present a defense. Bauml's proposed instruction, taken verbatim from State v. Mehrabian,[24] states, "Acquiring property 'by aid of deception' requires that the victim relied on the deception. If the victim would have parted with the property even if the true facts were known, there is no theft."

---

[23] See RCW 9A.56.010(4).
[24] 175 Wn. App. 678, 701, 308 P.3d 660 (2013).

It is "well established," however, that the use of certain language in an opinion does not mean it can be properly incorporated into a jury instruction.[25] Further, Bauml's proposed instruction simply rewords the court's instruction because both require the jury to find that the defendant's deception, at least in part, caused the victim to part with the property. Because the court's instruction satisfied Bauml's right to receive a fair trial and the trial court has discretion in the wording of jury instructions, the trial court did not err in refusing to give Bauml's instruction.

### III. First-Time Offender Waiver

Finally, Bauml contends that the trial court abused its discretion by categorically refusing to impose a first-time offender waiver on any person convicted of a theft involving a large sum of money. We disagree. Generally, a defendant cannot appeal a sentence within the standard sentencing range.[26] But an offender may challenge the procedure a court used to impose the sentence.[27] A trial court abuses its discretion when "'it refuses categorically to impose an exceptional sentence below the standard range under any circumstances.'"[28]

---

[25] State v. Alexander, 7 Wn. App. 329, 335, 499 P.2d 263 (1972); accord Turner v. City of Tacoma, 72 Wn.2d 1029, 1034, 435 P.2d 927 (1967).

[26] RCW 9.94A.585(1).

[27] State v. Grayson, 154 Wn.2d 333, 338, 111 P.3d 1183 (2005).

[28] Grayson, 154 Wn.2d at 342 (quoting State v. Garcia-Martinez, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997)).

The first-time offender waiver allows a sentencing court to waive the imposition of a sentence within the standard sentence range and impose a lesser sentence that may include up to 90 days of confinement and community custody.[29] The trial court has broad discretion in sentencing a defendant under the first-time offender option or in refusing to grant a first-time offender waiver.[30]

Here, the record does not support Bauml's claim that the trial court categorically refused to impose a first-time offender waiver. The record shows that the trial court declined to afford Bauml a first-time offender waiver and imposed the maximum term in the standard range for numerous reasons specific to this case. In the court's view, the unpaid loan amount was exceptional, and Bauml's continuous effort to take money from Cooper was "pathological." The court further noted that Bauml did not appear to understand the gravity of her actions and the fact that the case did not involve one friend doing a favor for another but deceit on Bauml's part.

Thus, the trial court did not abuse its discretion in sentencing Bauml because it denied her the first-time offender waiver based on the specific facts and circumstances of this case.

---

[29] RCW 9.94A.650(2), (3). A jury convicted Bauml of multiple counts of theft with offense dates spanning from April 2009 to May 2011. Although RCW 9.94A.650 was amended in 2011, the changes are not relevant here.

[30] State v. Johnson, 97 Wn. App. 679, 682, 988 P.2d 460 (1999).

## IV. Statement of Additional Grounds for Review

In her statement of additional grounds for review, Bauml appears to make an ineffective assistance of counsel claim. She contends, "The public defender's office was not willing to allocate the funds and time necessary to provide me an adequate defense." Bauml asserts that the public defender's office could not afford to manage the many out-of-state witnesses whose testimony she needed to prove her theory of the case or to document her cash expenditures, an essential component of her defense. Bauml also claims her attorneys prevented her from testifying.

To prevail on an ineffective assistance of counsel claim, the defendant must show two components: (1) trial counsel's performance was deficient, meaning counsel made errors so serious that counsel did not satisfy the defendant's Sixth Amendment right to counsel, and (2) the deficient performance prejudiced the defense, meaning counsel's errors were so serious as to deprive the defendant of a fair trial.[31] Judicial scrutiny of counsel's performance must be highly deferential, and the defendant must overcome the presumption that the challenged action "'might be considered sound trial strategy.'"[32] The record contains no information about many of the people Bauml identifies as witnesses

---

[31] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[32] Strickland, 466 U.S. at 689 (quoting Michel v. State of Louisiana, 350 U.S. 91, 101, 76 S. Ct. 158, 100 L. Ed. 83 (1955)).

who should have been called, placing this claim outside the scope of direct review and possibly the subject of a personal restraint petition. Further, Bauml has failed to show that her trial counsel did not provide a competent defense. We therefore reject Bauml's apparent ineffective assistance claim.

CONCLUSION

The State presented sufficient evidence for a rational juror to find beyond a reasonable doubt that Bauml deceived Cooper about the reasons she needed the money and her ability to repay it, that Cooper relied on Bauml's deception in loaning her the money, and that Bauml intended to permanently deprive Cooper of the money. The trial court did not err in refusing to submit Bauml's requested jury instruction because it repeated the court's instruction, which satisfied Bauml's right to a fair trial. Similarly, the trial court did not err in sentencing Bauml because it denied her a first-time offender waiver based on the facts of this case and did not categorically refuse to consider her request.

Affirmed.

_____

WE CONCUR:

_____        _____
Trickey, ACJ                    Becker, J.

-16-