[No. 36922-9-I.   Division One.   October 13, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. CARLOS
GARCIA-MARTINEZ, ET AL., *Defendants*, JESUS ABITIA
ENRIQUEZ, *Appellant.*

*Kimberly N. Gordon* of *Washington Appellate Project*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Erin Riley, Deputy*, for respondent.

AGID, J. — Jesus Enriquez appeals his conviction and standard range sentence for delivery of cocaine. He argues that the sentencing court erred when it failed to impose a sentence below the standard range and that the prohibition against appeal of standard range sentences in RCW 9.94A.210(1) violates the equal protection clauses of the state and federal constitutions. We hold that the prohibition is necessary to effectuate a compelling governmental interest, i.e., the proportionality, equality and justice of sentences for all similarly situated defendants. We also

conclude that the trial court properly denied Enriquez's request for an exceptional sentence, and affirm.

## FACTS

Early on the morning of February 26, 1995, Seattle Police Officer Michelle Hackett was working as an undercover buyer in a buy-bust operation near First and Union. Officer Hackett testified at trial that Enriquez was standing nearby with Carlos Garcia-Martinez (Garcia) and Lana Cortez. Hackett approached them and asked if they knew where she could get a "teener."[1] Enriquez asked Hackett what she needed and she answered "a sixty of coca." Enriquez replied, "yeah, I got it, wait here." He turned to Garcia, who did not speak English, and spoke to him in Spanish. Cortez then directed Hackett to follow them down a stairwell to Western Avenue. At the foot of the stairwell, Enriquez asked Hackett if she had her money. Garcia pulled a plastic bag containing white powder from the crotch area of his pants. At that point, a large group of people approached, forcing them to move to a nearby park. At the park, Garcia again retrieved the plastic bag and poured some of the powder onto a plastic wrapper Enriquez pulled from his pocket. Enriquez closed the wrapper and gave it to Cortez in exchange for cash.

Garcia then ripped a piece from a plastic trash bag and poured powder into it. Hackett testified that Enriquez picked it up, twisted it closed, tied it and carried it over to her. She gave him the $45 he asked for in exchange for the packet, which contained .27 gram of white powder containing cocaine. As Enriquez and Garcia walked away, Hackett gave the "good buy" signal to let other officers know she had completed a narcotics transaction. The officers moved in to make the arrests, and Enriquez ran. Officer Martin Welte chased Enriquez and saw him throwing money away as he ran. Welte retrieved $68. One of the bills was a marked bill Hackett had used to purchase the cocaine.

---

[1] A "teener" is a sixteenth ounce of flake cocaine.

Enriquez testified that he and Cortez had pooled their money to buy some cocaine. When they ran into Garcia, from whom Enriquez had bought heroin in the past, Garcia and Enriquez agreed to a cocaine and heroin deal. According to Enriquez, when Hackett approached and asked if he knew where she could buy a "teener," he told her "no." Enriquez denied that he helped Garcia package the drugs for Cortez. He testified that when Garcia offered him the second packet, he refused it and Garcia told him to give it to Hackett. He did so, and she gave him $45. He accepted the cash and began walking after Garcia, who had already started to leave, to give it to him. When he saw Garcia being arrested, he ran and was arrested himself.

Enriquez was charged by amended information with delivery of cocaine. At the conclusion of trial, the jury returned a guilty verdict. Enriquez requested an exceptional sentence below the standard range,[2] arguing that a sentence of 48 months with 12-18 months of inpatient drug treatment would save the public the unnecessary expense of incarcerating him for a longer period of time. He also argued that because his involvement in the transaction was minimal and the amount of cocaine was unusually small, he was entitled to an exceptional sentence downward based on *State v. Alexander*, 125 Wn.2d 717, 888 P.2d 1169 (1995). The trial court rejected Enriquez's arguments, stating that while it preferred not to incarcerate anyone for a period as long as that dictated by the standard range, it believed that an exceptional sentence below the standard range was simply insupportable under the facts of this case. The court observed that the amount of drugs involved was "pretty standard for a street deal" and that the nature of Enriquez's involvement was "pretty typical." It imposed a standard range sentence of 87 months, the bottom of the standard range.

---

[2]Based on an offender score of 8, the standard range for Enriquez was 87-116 months.

## Appeal of Standard Range Sentence

Enriquez challenges the trial court's refusal to impose an exceptional sentence below the standard range. He argues that the prohibition against appeal of a standard range sentence in RCW 9.94A.210(1) violates the equal protection clauses of both the state and federal constitutions by denying a particular group of defendants—those receiving standard range sentences—the right to appeal their sentences. The Fourteenth Amendment states "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States . . . nor deny to any person within its jurisdiction the equal protection of the laws." Article I, section 12 of the Washington Constitution states "[n]o law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations." Because the equal protection clause and the privileges and immunities clause of the Washington Constitution are substantially identical, they are considered under the same analysis. *State v. Shawn P.*, 122 Wn.2d 553, 559-60, 859 P.2d 1220 (1993). Both require that persons similarly situated be treated similarly. *Shawn P.*, 122 Wn.2d at 560. *But see Griffin v. Eller*, 130 Wn.2d 58, 64-65, 922 P.2d 788 (1996) ( the extent to which the constitutional guarantees in art. I, § 12, exceed those under the Fourteenth Amendment remains an open question).

The first step in any equal protection analysis is to determine the appropriate standard of review—strict scrutiny, intermediate scrutiny, or the rational basis test. *Shawn P.*, 122 Wn.2d at 560. The standard applied depends on the nature of the interest affected or the characteristics of the class created by the legislation. *Shawn P.*, 122 Wn.2d at 560. Strict scrutiny applies when the allegedly discriminatory classification affects a suspect class or threatens a fundamental right. We use intermediate scrutiny in the limited circumstances where the law

affects important rights or semisuspect classifications. The rational basis test applies where the statutory classification does not involve a suspect or semisuspect class and does not threaten a fundamental right. *Shawn P.*, 122 Wn.2d at 560. Enriquez argues that, because the right to appeal in all criminal cases is guaranteed in article I, section 22 of the Washington Constitution, the prohibition against appeal of a standard range sentence in RCW 9.94A.210(1) threatens a fundamental right and strict scrutiny should apply. *Cf., San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33-34, 93 S. Ct. 1278, 1296-97, 36 L. Ed. 2d 16 (1973) (fundamental rights are those "explicitly or implicitly guaranteed by the Constitution"). We agree. Unless the prohibition against appeal of a standard range sentence in RCW 9.94A.210(1) is necessary to effectuate a compelling governmental interest, it would violate the equal protection clauses of the state and federal constitutions. *See State v. Hernandez-Mercado*, 124 Wn.2d 368, 376, 879 P.2d 283 (1994).[3]

█ We conclude that the governmental interest here is a compelling one. The Legislature's primary purpose in promulgating the Sentencing Reform Act (SRA) was to replace the prior indeterminate, rehabilitation-oriented sentencing system with a determinate system, the focus of which was not rehabilitation but "proportionality, equality and justice." *State v. Barnes*, 117 Wn.2d 701, 710, 818 P.2d 1088 (1991). This was because studies had shown the indeterminate sentencing system resulted in significant disparity among sentences imposed for similar offenses depending on the decision maker's own personal philosophy and perspective. The Legislature was particularly concerned that the punishment for a criminal offense be

---

[3]We are aware of this court's decision in *State v. McNeair*, 88 Wn. App. 331, 944 P.2d 1099 (1997), applying the rational basis test to McNeair's equal protection challenge to the drug offender sentencing alternative's limits on those eligible. The distinction between this case and *McNeair* is that he rested his challenge on his liberty interest, which is not a fundamental right of those convicted of a crime, not his constitutional right to appeal. *See State v. Ward*, 123 Wn.2d 488, 516, 869 P.2d 1062 (1994) (personal liberty interests alone are not sufficient to subject a statute to strict scrutiny).

proportionate both to the seriousness of the offense and the offender's criminal history, thereby ensuring that the punishment imposed would be just. RCW 9.94A.010(1). To that end, the Legislature also restructured trial judges' discretion so as to more closely control—but not abolish—that discretion. *See Barnes*, 117 Wn.2d at 711. In so doing, the Legislature sought to assure each defendant's right to equal protection; i.e., the right to a sentence in the same range as others committing similar crimes. By limiting judges' discretion to sentence a defendant outside the standard range and precluding appeals regarding the length of a standard range sentence, the Legislature sought to ensure that punishment for each criminal offense would be commensurate with that imposed on others with similar criminal histories committing a similar offense. *See* RCW 9.94A.010(3). To permit the appellate courts to second-guess that decision would destroy the uniformity the Legislature sought to achieve. The bar against appeal of the length of a standard range sentence also serves the additional purpose of making frugal use of judicial resources. *See* RCW 9.94A.010(6). The Legislature's primary purpose, assuring "proportionality, equality and justice" in sentencing, taken together with the prudent use of state resources, amounts to a compelling governmental interest. This is especially true in light of the fact that a defendant may still appeal his conviction and, as set out below, a court's refusal to exercise discretion or its choice to sentence on an improper basis.[4]

■■ To begin with, we must distinguish between those simply sentenced within the standard range and those who, like Enriquez, seek to challenge a court's refusal to impose an exceptional sentence below the standard range. As the Supreme Court explained in *State v. Herzog*, RCW 9.94A.210(1) is not an absolute prohibition on the right of

---

[4]In *State v. McNeair*, we also held that a defendant receiving a standard range sentence may bring a legal challenge to the constitutionality of a sentencing provision of the SRA because it is not simply a challenge to the length of his sentence but rather to the Legislature's power to structure all sentences in a particular way. *McNeair*, 88 Wn. App. at 337-38.

appeal. 112 Wn.2d 419, 423, 771 P.2d 739 (1989). Rather, it precludes only appellate review of " 'challenges to the amount of time imposed when the time is within the standard range'." *Herzog*, 112 Wn.2d at 423 (quoting *State v. Ammons*, 105 Wn.2d 175, 183, 713 P.2d 719, 718 P.2d 796, *cert. denied*, 479 U.S. 930 (1986)). It is the Legislature's prerogative to determine the presumptive sentence ranges for each crime. *State v. Pascal*, 108 Wn.2d 125, 137-39, 736 P.2d 1065 (1987). Those ranges are presumed constitutional. *See Ammons*, 105 Wn.2d at 180 (the Legislature's power to determine presumptive sentence ranges is subject only to the constitutional prohibition against excessive fines and cruel and unusual punishment). So long as a court imposes a sentence within the presumptive range and a defendant has not alleged that any mitigating factors exist, a court cannot be said to have abused its discretion, since it has neither exercised nor refused to exercise discretion. *See Ammons*, 105 Wn.2d at 183 (a trial court's decision regarding the length of a sentence within the standard range is not appealable because there can be no abuse of discretion as a matter of law).

As our Supreme Court has pointed out, the statute itself does not preclude a challenge to the procedure by which a sentence within the standard range is imposed, so long as a defendant can show either that the sentencing court refused to consider information mandated by RCW 9.94A.110 or that the defendant timely and specifically objected to consideration of certain information and no evidentiary hearing was held. *State v. Mail*, 121 Wn.2d 707, 713, 854 P.2d 1042 (1993). *See also State v. Friederich-Tibbets*, 123 Wn.2d 250, 252, 866 P.2d 1257 (1994); *State v. Rousseau*, 78 Wn. App. 774, 898 P.2d 870 (1995), *review denied*, 128 Wn.2d 1011 (1996). Thus, if a court were to rely on an impermissible basis like race, gender or religion and sentence the defendant to the top of the standard range on that basis, a defendant could still appeal the sentence even though it is within the standard range because the challenge is to the constitutionality of the basis for the sentence, not its length.

The same principles apply where a defendant has requested an exceptional sentence below the standard range: review is limited to circumstances where the court has refused to exercise discretion at all or has relied on an impermissible basis for refusing to impose an exceptional sentence below the standard range. A court refuses to exercise its discretion if it refuses categorically to impose an exceptional sentence below the standard range under any circumstances; i.e., it takes the position that it will never impose a sentence below the standard range. A court relies on an impermissible basis for declining to impose an exceptional sentence below the standard range if it takes the position, for example, that no drug dealer should get an exceptional sentence down or it refuses to consider the request because of the defendant's race, sex or religion. Even in those instances, however, it is the refusal to exercise discretion or the impermissible basis for the refusal that is appealable, not the substance of the decision about the length of the sentence. Conversely, a trial court that has considered the facts and has concluded that there is no basis for an exceptional sentence has exercised its discretion, and the defendant may not appeal that ruling. So long as the trial court has considered whether there is a basis to impose a sentence outside the standard range, decided that it is either factually or legally insupportable and imposed a standard range sentence, it has not violated the defendant's right to equal protection.

Here, the trial court declined to impose a sentence below the standard range despite its expressed concern about the length of the range. It did so because it concluded there was no factual basis to justify imposing a sentence below the standard range. It based that conclusion on its observation that the amount of drugs here "was pretty standard for a street deal" and the nature of Enriquez's involvement "was pretty typical also."[5] In other words, the court just disagreed with Enriquez that the facts war-

---

[5] We also reject Enriquez's argument that he was entitled to a sentence below the standard range based on *State v. Alexander*, 125 Wn.2d 717, 888 P.2d 1169

ranted entry of the findings Enriquez sought. Without an adequate factual or legal basis to permit it to step outside the standard range, the court decided it could not impose a sentence other than one within the standard range. This is an appropriate exercise of sentencing discretion.

A majority of the panel having concluded that the remainder of this opinion lacks precedential value, it is ordered that only the foregoing will be published. The balance of the opinion shall be filed for public record as provided in RCW 2.06.040.

GROSSE and ELLINGTON, JJ., concur.

Reconsideration denied January 15, 1998.

Review denied at 136 Wn.2d 1002 (1998).

(1995). In *Alexander*, the State did not challenge the trial court's finding that the amount of cocaine constituted an "extraordinarily small amount" or that Alexander's crime reflected a low degree of involvement or sophistication. 125 Wn.2d at 723. The court did not determine that the factual findings were correct but only that, because they were unchallenged, they were verities on appeal. Even though Enriquez urged the court to do so, the record does not support Enriquez's contention that the trial court improperly compared the facts of this case to those of *Alexander* or any other published case. Rather, the court simply found that the amount of drugs delivered and the level of Enriquez's involvement were typical. This is a determination the trial courts are uniquely qualified to make. Enriquez's own testimony that "[e]very person that uses drugs understands what a teener is" itself supports the trial court's ruling. An exceptional sentence is appropriate only when the facts of the crime distinguish it from other crimes in the same statutory category. *State v. Medrano*, 80 Wn. App. 108, 112, 906 P.2d 982 (1995). The court here simply found these facts to be indistinguishable from other buy-bust cases.