2014 JAN 27 AM 9:09


IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69256-9-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| MAXFIELD P. DARE, | ) | |
| | ) | |
| Appellant. | ) | FILED: January 27, 2014 |

SCHINDLER, J. — Maxfield P. Dare claims the court abused its discretion in denying his request for a "Drug Offender Sentencing Alternative" (DOSA) by failing to take into consideration the benefit to Dare and the community or the legislative intent to expand the eligibility for a DOSA. We reject Dare's argument as without merit, and affirm.

## FACTS

The facts are undisputed. On March 14, 2012, the State charged Maxfield P. Dare with possession of a stolen vehicle, Count I, and trafficking in stolen property in the first degree, Count II, King County Case Number 12-1-01536-4 SEA. The certification for probable cause states that on the evening of March 6, 2012, an off-duty police officer witnessed an individual, later identified as Dare, sitting in a 2011 Audi A4 that belonged to Charles Koehn. Koehn and his spouse Yoo Jung Chong had reported

a burglary at their home and the theft of the 2011 Audi earlier that day. The certification also states that Patricia King reported a burglary at her home between the hours of 11:45 p.m. on February 27 and 4:30 a.m. on February 28, 2012. The stolen items included a cell phone and Nook tablet. On February 28, Dare sold King's cell phone and Nook tablet at a pawn shop.

On March 14, the State filed separate charges against Dare for robbery in the second degree, King County Case Number 12-C-01541-1 SEA. According to the certification, Dare and his friends Tamir Thomas and Brady Bracken assaulted and robbed three college students in the University District. Dare, Thomas, and Bracken confronted the students and stole two cell phones, a debit card, and cash. During the course of the robbery, Thomas struck one of the victims in the face.

On March 27, the State filed an amended information in King County Case Number 12-1-01536-4 SEA, charging Dare with three counts of residential burglary: Count III as to King, Count IV as to Koehn and Chong, and Count V as to Anthony and Rebecca Dubin. The State also alleged as an aggravating circumstance under RCW 9.94A.535(3)(u) that the victims were at home during the three burglaries.

The certification for probable cause states that on March 6, 2012, Dare broke into the home of Anthony and Rebecca Dubin at approximately 2:52 a.m. while the Dubins and their three children were asleep. The Dubins woke up after hearing someone say, " '[L]et's go.' " The Dubins checked the house and found the back door open. Dare stole a digital camera, a cell phone, and a Target gift card. At the time of his arrest, Dare had the Dubins' Target gift card in his possession.

2

The Seattle Police Department continued to investigate and on May 17, the State filed an amended information adding another count of residential burglary, two counts of theft of a motor vehicle, and one count of trafficking in stolen property in the first degree under King County Case Number 12-C-01536-4 SEA. The State also alleged that the victim was present in his home during the residential burglary. The certification for probable cause states that on February 27, 2012, Dare broke into the home of David Furhman while he and his family were asleep and stole debit and credit cards, $30 in cash, skis, and their 2005 Honda Pilot.

On June 18, Dare entered into a plea agreement with the State. Dare agreed to real facts as set forth in the certifications for probable cause. In King County Case Number 12-C-01536-4 SEA, Dare agreed to plead to one count of possession of a stolen vehicle, two counts of trafficking in stolen property in the first degree, four counts of residential burglary, and two counts of theft of a motor vehicle. Dare also agreed to plead to the aggravating circumstances under RCW 9.94A.535(3)(u), admitting that victims were at home during all four residential burglaries.

The State agreed to amend the charges in King County Case Number 12-C-01541-1 SEA from robbery in the second degree to one count of theft in the first degree and one count of assault in the fourth degree. The State also agreed to not charge Dare with other crimes that occurred between February 6 and March 6, 2012, including six nighttime residential burglaries, five auto thefts, and a car prowl, on the condition that Dare agreed to pay restitution and abide by a no-contact order with the victims.

In the plea agreement, the State conceded that Dare was eligible for a DOSA but did not agree to recommend a DOSA. The plea agreement states that the State would

3

seek an exceptional sentence of 132 months: 84 months for each of the four counts of residential burglary to run concurrently and a consecutive sentence of 48 months for the "victim present aggravator."

Before sentencing, the State filed a brief in support of the request for an exceptional sentence. In support of the exceptional sentence, the State cited the aggravating circumstance under RCW 9.94A.535(3)(u) that allows a court to impose a sentence above the standard range if the defendant commits a burglary while the victim is present in the residence.[1] The State also argued that because Dare committed multiple current offenses and his high offender score would result in some of his current offenses going unpunished, the court could impose an exceptional sentence under RCW 9.94A.535(2)(c).[2] The State noted Dare had 15 juvenile adjudications that included eight residential burglaries, at least five of which occurred at night in occupied residences.

The State attached a transcript from the disposition hearing in juvenile court. The juvenile court judge specifically addressed the harm to the victims from the residential burglaries: "[E]veryone in the world needs to have a place, and it usually is

---

[1] RCW 9.94A.535(3)(u) states, in pertinent part:

> (3) Aggravating Circumstances - Considered by a Jury - Imposed by the Court
> Except for circumstances listed in subsection (2) of this section, the following circumstances are an exclusive list of factors that can support a sentence above the standard range. . . .
> . . . .
> (u) The current offense is a burglary and the victim of the burglary was present in the building or residence when the crime was committed.

[2] RCW 9.94A.535(2)(c) states, in pertinent part:

> (2) Aggravating Circumstances - Considered and Imposed by the Court
> The trial court may impose an aggravated exceptional sentence without a finding of fact by a jury under the following circumstances:
> . . . .
> (c) The defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished.

their home, where they know they can go and be safe. . . . [T]hat is something that you have taken away from certain people." Dare assured the juvenile court judge that he was "eager to change" after his release. The State pointed out that the current residential burglaries took place approximately five months after Dare was released from a juvenile rehabilitation facility (JRA).

Dare filed a pre-sentence report asking the court to impose a DOSA. In support of his request, Dare provided an "Alcohol and Drug Evaluation" conducted by the treatment director at Sunrise Centers. The evaluation states, "[I]t appears that there is Sufficient Evidence of Poly-Substance Dependence."[3] Dare also provided the results of the drug tests performed on March 10, 2012 by King County Jail Health Services showing that he tested positive for marijuana, cocaine, and benzodiazepine.

At the sentencing hearing, victims of the charged and uncharged residential burglaries addressed the court. The State also read into the record letters provided by other victims, including Koehn and Chong, describing the impact of the residential burglaries and expressing support for an exceptional sentence. Seattle Police Detective Kate Hernan, the lead detective in the juvenile cases, and Seattle Police Detective George Davisson, the lead detective in the current cases, also addressed the court. Detective Davisson stated that despite numerous opportunities and warnings, Dare's criminal behavior only "escalated."

Dare's father, Michael Dare, spoke at length on Dare's behalf. Michael Dare described Dare's difficult upbringing, struggle with drugs and alcohol, and success while

---

[3] (Emphasis omitted.)

under supervision at JRA. Dare also described to the court the impact drugs and alcohol had on his behavior, and apologized to the victims.

The court denied Dare's request for a DOSA and imposed an exceptional sentence of 120 months. In rejecting the request for a DOSA, the court ruled, in pertinent part:

> Well, let me just say to all the people interested in this case, these sentences are always difficult for the Court, I accept, and, in fact, I'm persuaded that [Dare] has a significant drug problem, that chemical dependency evaluation that defense provided said he was withdrawing from benzodiazepines when he was booked into the jail. And I've been a drug court judge, I know that addicts have difficulty succeeding and sometimes they fail multiple times before they succeed, I am also a big believer in the DOSA alternative because, for one thing, DOSA gives you supervision upon release, which the State's recommendation doesn't. And so I've seriously considered the DOSA here, but I just cannot impose the DOSA, I just can't.
>
> And I think there comes a point where I have to weight [sic] the benefit to the individual in giving [Dare] a chance to receive the treatment he so obviously needs versus the protection of the public.
>
> And what concerns me here is not just that he reoffended so quickly after release from JRA, but that it was multiple offenses, and that's the significant factor for me. Just looking at the dates, there being multiple offenses being committed just so close in time, and so I just cannot justify, in the interest of the public, a DOSA sentence.

## ANALYSIS

Dare challenges the trial court's decision to deny his request for a DOSA.[4] Dare claims the trial court abused its discretion by failing to fully and fairly consider the benefit of a DOSA to Dare and the community, and by failing to take into consideration the intent of the legislature to expand the eligibility requirements for a DOSA.

---

[4] Dare does not challenge the exceptional sentence

RCW 9.94A.660(3) grants the court the discretion to waive a standard-range sentence and impose an alternative sentence for an eligible offender.[5] The sentencing court's decision of whether to grant a DOSA is not reviewable on appeal. State v. Grayson, 154 Wn.2d 333, 338, 111 P.3d 1183 (2005). Review of such a decision is limited to circumstances where the court has categorically refused to exercise its discretion to impose a DOSA, or has relied on an impermissible basis for refusing to impose a DOSA. Grayson, 154 Wn. 2d at 342; State v. Garcia-Martinez, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997).

The purpose of a DOSA is to provide treatment and rehabilitation when the court determines it is in the best interest of the individual and the community. Grayson, 154 Wn.2d at 343. Where a court has considered the facts and has concluded that there is no basis for a DOSA, it has exercised discretion and a defendant may not appeal such a ruling. Garcia-Martinez, 88 Wn. App. at 330.

The record does not support Dare's argument that the court abused its discretion by failing to fully and fairly consider the benefit of a DOSA to him and to the community. While the court agreed that Dare "has a significant drug problem" and "seriously considered" imposing a DOSA sentence, the court determined the community would not benefit from the imposition of a DOSA sentence. In rejecting the request for a DOSA, the court carefully and deliberately weighed Dare's criminal history, the benefits of

---

[5] RCW 9.94A.660(3) states, in pertinent part:

If the sentencing court determines that the offender is eligible for an alternative sentence under this section and that the alternative sentence is appropriate, the court shall waive imposition of a sentence within the standard sentence range and impose a sentence consisting of either a prison-based alternative . . . or a residential chemical dependency treatment-based alternative.

treatment for Dare, and whether a DOSA would serve the interests of the community.

The court ruled, in pertinent part:

> [T]here comes a point where I have to weight [sic] the benefit to the individual in giving [Dare] a chance to receive the treatment he so obviously needs versus the protection of the public.
> And what concerns me here is not just that he reoffended so quickly after release from JRA, but that it was multiple offenses, and that's the significant factor for me. Just looking at the dates, there being multiple offenses being committed just so close in time, and so I just cannot justify, in the interest of the public, a DOSA sentence.

The court did not abuse its discretion in concluding that the risk Dare posed to the community outweighed the benefit of a DOSA sentence for Dare.

Dare also claims the court did not take into consideration the legislature's decision to expand the eligibility for a DOSA, and a court cannot consider the timing or number of offenses for a DOSA. Neither legislative history nor case law supports Dare's argument.

Dare contends the court erred in denying the DOSA by relying on recidivism and his multiple offenses. In support, Dare points to the DOSA legislative history stating that a goal of the 1999 amendment expanding DOSA eligibility for nonviolent crimes was to reduce recidivism. See S.B. REP. on Engrossed Second Substitute H.B. 1006, 56th Leg., Reg. Sess. (Wash. 1999). But the Senate Bill Report also expressly reiterates the discretion of the court to impose a DOSA based on the circumstances of the crime and the benefit to the offender and the community: "Where chemical dependency contributed to an offense, the court may order rehabilitative treatment or other affirmative conduct reasonably related to the circumstances of the crime and reasonably necessary or beneficial to the offender or community in rehabilitating the offender." S.B.

REP. on Engrossed Second Substitute H.B. 1006, at 2.[6] Further, a court is entitled to rely on the offender's criminal history in determining whether an alternative sentence would benefit the offender and the community. State v. Jones, 171 Wn. App. 52, 55-56, 286 P.3d 83 (2012).

Here, the court did not abuse its discretion by taking into account Dare's criminal history and determining that a DOSA would not benefit the community.

We affirm.

WE CONCUR:

---

[6] (Emphasis added.)