# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE STATE OF WASHINGTON,

Respondent,

v.

JEFFREY PAUL TRAMMEL,

Appellant.

No. 83471-1-I

DIVISION ONE

UNPUBLISHED OPINION

MAXA, J. – Jeffrey Trammel appeals his sentence, asserting that the trial court erred by denying his motion for an exceptional sentence below the standard range. He argues that the trial court failed to apply the correct legal standard regarding the mitigating factor of victim provocation under RCW 9.94A.535(a)(1) and impermissibly denied his requested exceptional sentence based on his race.

We hold that the trial court did not err in denying Trammel's request for an exceptional sentence, and we deny Trammel's assertions in a statement of additional grounds (SAG). Accordingly, we affirm Trammel's sentence.

FACTS

*Background*

On August 24, 2018, Trammel, a Black man, parked his car in a towing company's parking lot in Renton.[1] Shane Hallgren, a White man and an employee of

---

[1] These background facts are based on the State's certification for determination of probable cause, which Trammel agreed the trial court could rely on to establish a factual basis for his guilty plea.

the towing company, observed Trammel throwing food garbage out of his car window. Hallgren drove up to Trammel's car, and a conversation took place while both remained in their cars.

Hallgren then exited his vehicle, picked up some of the garbage that was on the ground, and threw it into Trammel's car. Hallgren turned around and began walking back to his truck. Trammel backed his car up and then fired four shots from a gun in Hallgren's direction. Hallgren was hit with bullets in the upper arm and lower back. Hallgren's tow truck and another unoccupied car in the lot sustained damage from the bullets. Trammel drove out of the parking lot and left the area.

Law enforcement identified Trammel's license plate through a surveillance video and later executed search warrants on Trammel's residence and car. Officers located a semi-automatic pistol in his home. When searching Trammel's car, the police officers noticed food wrappers and bags near the driver's side seat as well as a hamburger bun stuck to the back of the driver's seat.

The State charged Trammel with first degree assault. Trammel pleaded guilty. He maintained his innocence to the crime charged and sought to enter an *Alford*[2] plea, which the trial court accepted.

*Presentence Information*

In preparation for the sentencing hearing, the trial court reviewed transcripts of Trammel's interview with psychologist, Micheal Kane, Psy.D., and Hallgren's interview with Trammel's attorney and defense investigator. Other materials the court reviewed

---

[2] *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L. Ed. 2d 162 (1970).

included Dr. Kane's expert report, the parties' presentence reports, multiple letters from friends and family of both Trammel and Hallgren, and a video of the incident.

During Hallgren's interview, he was asked what was going on in his mind when he decided to approach Trammel about the garbage thrown on the ground. Hallgren responded, "I figured the worst case scenario, maybe we'd have a fist fight or something over it. Never thought it'd come to all of this, but you know, . . . I don't know exactly what was going through my mind." Clerk's Papers (CP) at 113. Hallgren agreed that by throwing some of the garbage back into Trammel's car, Hallgren knew "it was going to get on him." CP at 127. But Hallgren was not sure whether or not the garbage he threw actually hit Trammel.

During Trammel's interview with Dr. Kane, Trammel did not claim that Hallgren made verbal threats or displayed a weapon. Trammel stated he did not point his pistol directly at Hallgren. When asked if he fired the gun recklessly, Trammel responded, "Yeah, I guess you could say that." CP at 242.

In the same interview, Trammel described several traumatic personal experiences in his life. In 2002, an unknown man aggressively approached Trammel and Trammel's wife at a restaurant. The man got into Trammel's face, yelled at him, grabbed some of his wife's food, and became increasingly physically aggressive. Trammel never provoked the man, and Trammel recalled that the man had friends backing him up. Trammel felt forced to pull out his gun. The man came toward Trammel, and Trammel shot and injured him. Trammel then immediately called the police and was cooperative, and no charges were filed because law enforcement determined that Trammel's actions were justified and he acted lawfully.

Trammel also reported several negative experiences with law enforcement where he was stopped and questioned while engaged in normal activities. In one incident, a White police officer pushed Trammel to the ground and broke Trammel's glasses when Trammel was on his way to a bus stop. In his report, Dr. Kane noted that Trammel also described a more recent event where he was driving and a White person in another vehicle began cursing and following him. Trammel was able to turn off onto a side street and avoid further conflict.

Dr. Kane provided responses to several questions in his report concerning Trammel's life experiences and how they affected his ability to act reasonably. Dr. Kane opined that on a more probable than not basis and to a reasonable degree of professional certainty, Trammel's "entire lifetime of prior experiences as an African American man living in a systemically racist society informed his deep underlying sense of himself as in danger from other men." CP at 163. Information obtained from clinical interviews and supported by psychological testing, "strongly support the contention that Mr. Trammel's past experiences and history specifically regarding race and racism, shaped his perception of the victim's actions." CP at 163.

Dr. Kane also acknowledged that Trammel's actions "do not meet the standard of the 'reasonable prudent person' in a general and decontextualized sense. A reasonable frightened person who had the opportunity to escape would have rolled up the window and driven away." CP at 165. However, Dr. Kane concluded, "He was not able to be reasonable when he felt threatened as he did that night. Mr. Trammel has a long-standing fear of white people." CP at 165.

*Sentencing*

The standard range sentence for Trammel was 93 to 123 months. Trammel filed a motion to request an exceptional sentence below the standard range of credit for time served and 36 months of community custody. The basis for this request was RCW 9.94A.535(1)(a), under which the court can impose a sentence below the standard range when "[t]o a significant degree, the victim was an initiator, willing participant, aggressor, or provoker of the incident." Trammel also emphasized that his life experiences affected his perception of fear during the altercation with Hallgren and supported an exceptional sentence.

The State requested a sentence of 93 months. The State did not dispute the "racial inequities and prejudices that black men have historical[ly] faced and continue to face in today's world." CP at 190-91. However, the State argued that Trammel's conduct in shooting Hallgren as he was walking away and as Trammel was leaving the area did not justify an exceptional sentence.

At the sentencing hearing, both parties presented argument and the trial court gave a lengthy oral ruling analyzing the sentencing issues.

The trial court characterized both Trammel and Hallgren as "hot-headed" on the night of the incident and stated that they both made poor decisions. Report of Proceedings (RP) at 79. The court noted that "[o]ne's weapon of choice was trash" and the "other's weapon of choice was a gun." RP at 81. The court acknowledged that if Hallgren had not thrown the garbage at Trammel, there may have been a different outcome. On the other hand, Trammel was not blocked by Hallgren's truck and was free to leave at the time he fired the shots.

The sentencing judge, who is Black woman, spoke at length in her ruling about race and reflected on Trammel's life experiences. The court noted there was "no denying" that "America is a racist society." RP at 91. Therefore, people of color "undoubtedly carry a higher level of stress and concern." RP at 91. The court spoke extensively about traumatizing experiences that people of color regularly endure, and concluded, "to be black in America is to be in a constant state of rage, and I dare, also fear." RP at 93.

The court then stated, "However, as black, brown, people of color, and natives in America, it becomes our burden, no matter how unjust it is, to learn to manage our rage." RP at 93. "We live in a constant state of fear." RP at 93. The court continued, "Yet we have the obligation of learning how to respond appropriately and to respond in a way that is appropriate to the threats before us," and "[w]e cannot let our fear overcome us." RP at 93. The court stated, "We are part of this society and, therefore, we are obligated to follow the laws of the society in which we live." RP at 93. The court further explained that "in order to maintain a law-abiding society, we must follow the letter of the law and we must understand that we are subject to the letter of the law." RP at 94.

Specifically addressing RCW 9.94A.535(1)(a), the trial court found that Hallgren's throwing garbage at Trammel amounted to assault in the fourth degree. However, the court stated that "you don't bring a gun to a knife fight." RP at 95. Instead of confronting Hallgren, Trammel pulled out a gun and, by his own statements to Dr. Kane, shot recklessly four times. The court acknowledged that Hallgren initiated the incident. But the court pointed to the fact that when Trammel shot his gun, he was in a position of

leaving the scene and Hallgren's back was to him. And the court found that there was no indication that Hallgren was pulling out a gun. The court concluded, "[T]his Court does not find under the totality of the circumstances and the facts, as presented in this case, that this is an appropriate mitigating factor." RP at 96.

The trial court also addressed the mitigating circumstance under RCW 9.94A.535(1)(c) that the defendant committed the crime while under duress. The court states that this circumstance was what Trammel really was relying on when he argued that the fear that he felt caused him to shoot Hallgren. The court again pointed to the facts of the case, particularly that there was no indication that Hallgren pulled a weapon and that Trammel simply could have left the scene in his car. The court concluded that without diminishing what Trammel felt that night, "his experiences and his fear that night are not compelling enough and substantial enough" to justify a mitigating circumstance. RP at 97.

The trial court again noted that "being a black man in America carries with it a certain level of fear." RP at 97. But the court stated that "it is what it is and it's the responsibility to handle our fear differently and to handle our trauma differently and appropriately in situations." RP at 98. The court emphasized that although Trammel's life experiences were unfortunate, he "shot a man for throwing trash in his face." RP at 100.

The court concluded,

[T]his Court understands probably more than most Courts, because I am black, I am a black woman living in America who comes from a black family who has experiences living black in America, that there is a certain amount of fear that we carry with us, and there are experiences that black men have that lead them to be in a perpetual state of fear, but that does not mean that

7

we can turn into our own vigilantes and take things into our own hands. And in this situation, this Court, again, I can't emphasize it enough, it was like bringing a gun to a knife fight.

As such, this Court does not find the Defense has established a legally sufficient reason to depart from the standard range, in light of the facts and totality of the circumstances in this case.

RP at 101.

The trial court imposed a standard range sentence of 93 months. Trammel appeals his sentence.

ANALYSIS

A.    LEGAL PRINCIPLES

In general, the trial court must impose a sentence within the standard sentencing range under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. *State v. Graham*, 181 Wn.2d 878, 882, 337 P.3d 319 (2014). However, the court may exercise its discretion to impose a sentence below the standard range if "substantial and compelling reasons" justify an exceptional sentence. RCW 9.94A.535. The sentencing court must find that a preponderance of the evidence establishes mitigating circumstances justifying a sentence below the standard range. RCW 9.94A.535(1). The statute lists several mitigating factors which allow the court to impose an exceptional sentence downward. RCW 9.94A.535(1).

A sentence within the standard range generally is not appealable. *See* RCW 9.94A.585(1). But when a defendant has requested an exceptional sentence downward, we can review the denial of that request if the defendant argues that the sentencing court either refused to exercise its discretion at all or relied on an impermissible basis for denying the request for an exceptional sentence. *State v.*

*McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017). A defendant's race is an impermissible basis for denying a request for an exceptional sentence. *State v. Garcia–Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997).

Here, there is no question that the trial court did not refuse to consider Trammel's request for an exceptional sentence. The court addressed and analyzed the request in great detail, but ultimately decided that an exceptional sentence was not warranted. Where a trial court has considered the facts and concluded there is no basis for an exceptional sentence, the court has exercised discretion. *Id.* The only issue here is whether the court denied the request for an exceptional sentence based on an impermissible basis.

B.    APPLICATION OF RCW 9.94A.535(1)(a)

Trammel argues that the trial court failed to apply the correct legal standard regarding the mitigating circumstance stated in RCW 9.94A.535(1)(a), that the victim provoked the incident. Specifically, he claims the sentencing court improperly believed RCW 9.94A.535(1)(a) required similar proportionate use of force as would be required to make a valid self-defense claim. We disagree.

A trial court may impose an exceptional sentence below the standard range based on a finding that "[t]o a significant degree, the victim was an initiator, willing participant, aggressor, or provoker of the incident." RCW 9.94A.535(1)(a). However, there is "no requirement that the trial court actually impose a mitigated exceptional sentence" under this statute. However, "no defendant is entitled to an exceptional sentence below the standard range." *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005).

Trammel correctly points out that the trial court found that Hallgren initiated the incident and that without his conduct the shooting likely would not have happened. Trammel claims that the reason the court denied the request for an exceptional sentence was because the evidence did not meet the standard of self-defense due to his disproportionate use of force. He asserts that this was an impermissible basis because the fact that a self-defense claim would fail does not make the defendant ineligible for the mitigating circumstance.

However, the record does not support Trammel's claim that the court refused to impose an exceptional sentence because he could not meet the elements of self-defense. The basis for the court's decision was that even though Hallgren initiated the initial confrontation, Trammel's response was not appropriate for the circumstances. He shot recklessly at Hallgren as he was walking away when Trammel easily could have simply driven away. The court did not state that Trammel had to prove lawful self-defense to obtain an exceptional sentence.

Trammel seems to suggest that the disproportionate response that prevented him from establishing self-defense could not be used as a factor in deciding whether to impose an exceptional sentence. But this argument makes no sense. The trial court in the exercise of its discretion is allowed to consider the totality of the circumstances in deciding whether to apply RCW 9.94A.535(1)(a).

In the exercise of its discretion, the trial court determined that RCW 9.94A.535(1)(a) did not apply primarily because Trammel's response was disproportionate to Hallgren's conduct – he brought a gun to a knife fight. Therefore, we

hold that the trial court did not deny Trammel's request for an exceptional sentence based on an impermissible interpretation of RCW 9.94A.535(1)(a).

C.      USE OF A HIGHER STANDARD BASED ON RACE

Trammel argues that the trial court denied his requested exceptional sentence on impermissible grounds because it held him to a higher standard based on his race. We disagree.

Trammel points to two comments the trial court made. First, the court noted that although "being a black man in America carries with it a certain level of fear," RP at 97, "it's the responsibility to handle our fear differently and to handle our trauma differently and appropriately in situations." RP at 98. Second, the court stated that although Black people carry with them a certain amount of fear, "that does not mean that we can turn into our own vigilantes and take things into our own hands." RP at 101.

The trial court passionately discussed her views on racism in America, the harassment and other difficulties she observes that Black people face, and the fear and rage that she asserts some Black people justifiably have. However, the trial court did not hold Trammel to a higher standard than a White defendant. The court did not suggest that he had to handle his fear differently than White people. Instead, the court stated that Trammel had the responsibility to handle his fear *differently than he did in this situation*. The court emphasized that regardless of Trammel's personal history, he could not shoot someone in the back for throwing garbage at him.

Moreover, to the extent any of these statements did suggest some unequal standard, the trial court expressly subsumed those concerns to the legal question presented, stating that, "in order to maintain a law-abiding society, we must follow the

11

letter of the law and we must understand that we are subject to the letter of the law."
CP at 94.

Therefore, the trial court's exercise of discretion was race neutral. The court concluded that Trammel's experiences "do not, in this Court's opinion, rise to the level that is so substantial and so compelling that they warrant a deviation from the standard range in light of the totality of the circumstances in this case." RP at 100. There is no indication in the record that had Trammel not been a Black man and the other facts of the case remained the same – including the unchallenged fact that the victim was walking away at the time he fired his weapon – the sentencing court would have granted his request for an exceptional sentence. And Trammel offers no authority holding that any reference to race in such a situation is impermissible.

We hold that the trial court in the exercise of its discretion denied Trammel's request for an exceptional sentence based on the facts of the case and did not base that decision on an impermissible basis – Trammel's race.

## D.    SAG CLAIMS

Trammel asserts two claims in a SAG. We reject them both.

Trammel's first SAG claim states:

> Judge said black people have a responsibility to handle their fear. But, read between the lines, it is still okay for white citizens if they want to; to attack and do anything to black people whenever they want to. I was to about [sic] the victims aggressive behavior toward other people, but it was never mentioned in court. But, my incident in 2002 was.

SAG at 1.

To the extent this claim reargues that the trial court held Trammel to a higher standard based on his race, we have addressed that argument above. Otherwise, we

12

cannot determine what further claim Trammel asserts here and therefore cannot address such a claim. RAP 10.10(c). We reject this claim.

In Trammel's second SAG claim, he challenges the trial court's consideration of the 2002 shooting incident because he was not convicted of any crime. However, Trammel raised the 2002 incident himself in his motion for an exceptional sentence. He asked the trial court to consider this incident along with several others to inform the court about how those experiences affected his perception of fear during the incident with Hallgren. The trial court properly considered this incident to better understand Trammel's life experiences. We reject this claim.

In addition, Trammel states that he did not know he shot Hallgren because he was not aiming at him. He apparently claims that this fact should mitigate his sentence. But although Trammel may not have aimed and fired his gun directly at Hallgren, he agreed with Dr. Kane that he fired recklessly. We reject this claim.

CONCLUSION

We affirm Trammel's sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

Mxon, J.

WE CONCUR:

Díaz, J.

Mann, J.