# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 55776-2-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| RASHAD DEMETRIUS BABBS, | |
| Appellant. | |

CHE, J. — In 2003, Rashad Babbs pled guilty to one count of second degree unlawful possession of a firearm and proceeded to a jury trial on first degree murder and attempted first degree murder charges, both with alleged firearm sentencing enhancements. A jury convicted Babbs of first degree murder with a firearm sentencing enhancement. The trial court declared a mistrial on the attempted first degree murder with a firearm sentencing enhancement count; later, Babbs was convicted as charged. Babbs was 21 years old at the time of the crimes. The trial court sentenced Babbs to the high end of the sentencing ranges for a total of 734 months of confinement.

In 2018, the sentencing court granted Babbs's motion to vacate his judgment and sentence due to a change in the law. In 2021, the sentencing court resentenced Babbs to the low end of the standard sentencing ranges, imposing a sentence of 570.75 months of confinement. Babbs appeals his standard range sentence. Babbs also raises additional claims in a statement of additional grounds (SAG).

We hold that Babbs cannot appeal his standard range sentence. We further hold that Babbs's SAG challenge to his offender score fails. We do not reach the remainder of Babbs' arguments. Accordingly, we affirm.

FACTS

In March 2001, Rashad Babbs and Phillip Hicks stopped Jonathan Webber and his wife, Chica Webber, as they were walking. *State v. Hicks*, noted at 134 Wn. App. 1026, 2006 WL 2223807, at *1 (Wash. Ct. App. Aug. 4, 2006) (unpublished). The two men asked the Webbers if they had drugs and the Webbers told the men that they did not. *Id*. The Webbers walked away and the two men followed them, demanding that the Webbers empty their pockets. *Id*. As the Webbers continued to walk away, the two men shot at them. *Id*. Jonathan Webber sustained several wounds and Chica Webber died. *Id*. Chica was pregnant and the mother of a two-year-old. Babbs was 21 years old at the time.

The State charged Babbs with aggravated first degree murder and, in the alternative, first degree felony murder (count I), attempted first degree murder (count II), and second degree unlawful possession of a firearm (count IV). The State alleged firearm sentencing enhancements on counts I and II. Babbs pled guilty to the second degree unlawful possession of a firearm charge before trial. After trial on the remaining charges, a jury convicted Babbs of one count of first degree felony murder with a firearm sentencing enhancement and a mistrial was declared on the attempted first degree murder charge. A second trial resulted in a conviction for first degree

attempted murder with a firearm sentencing enhancement.  The trial court sentenced Babbs to 734 months of total confinement.[1]  Babbs appealed his convictions and we affirmed.  *Id*.

In 2021, after our Supreme Court's decision in *State v. Weatherwax*,[2] Babbs was resentenced.  Prior to his resentencing, Babbs submitted a presentencing report and numerous addendums, agreeing with the State's offender score recalculation[3] and requesting an "exceptionally lenient sentence."  Clerk's Papers (CP) at 11.  Babbs requested that the trial court "impose two, concurrent 300-month terms (240 months, plus 60 months for the firearm enhancements)."  CP at 11.  Babbs further requested that his unlawful possession of a firearm conviction run concurrent with his other convictions.

Babbs argued that "an exceptionally lenient sentence [was] justified because [his] ability to conform his conduct to the requirements of the law was substantially diminished due to a combination of neurodevelopmental deficits, a history of frontal lobe injuries, and mental illness."  CP at 11.  Babbs explained that he "had endured numerous adverse and traumatic experiences as a child; sustained multiple significant injuries to his head; his brain was not fully mature; he suffered from mental illness; and he appears to be borderline intellectually disabled."  CP at 10-11.  Babbs further explained that "[c]ombined these factors significantly lessened his

---

[1] The court sentenced Babbs to 374 months of confinement on count I, 240 months of confinement on count II, and 22 months of confinement on count III.  Babbs's sentence included two 60-month firearm sentence enhancements on counts I and II.

[2] 188 Wn.2d 139, 392 P.3d 1054 (2017).  Under *Weatherwax*, where "the seriousness levels of two or more serious violent offenses are identical, the trial court must choose the offense whose standard range is lower as the starting point for calculating the consecutive sentences."  *Id*. at 156.

[3] The State recalculated Babbs's offender score as 0 points for the completed murder, 4 points for the attempted murder, and 5 points for the second degree unlawful possession of a firearm.

ability to consider and weigh options and most significantly to control his actions, especially in the presence of a peer." CP at 11.

Babbs submitted evidence of his academic achievements and certificates demonstrating his participation in programs while incarcerated. Babbs also submitted numerous supportive letters from community members requesting leniency and consideration for Babbs's youth at the time of the crime. Several letters emphasized Babbs's role as a mentor.

Babbs's codefendant, Hicks, acknowledged that he initiated the crime and requested leniency for Babbs. Babbs submitted a declaration from a developmental psychologist, Laurence Steinberg, outlining, among other topics, "the current understanding of neurobiological and psychological development during adolescence." CP at 37. The declaration did not specifically address Babbs.

The State submitted a sentencing memorandum requesting high-end sentences. Specifically, the State recommended a sentence of "280.5 months for Count I [felony murder in the first degree] plus the 60-month [firearm enhancement], consecutive to a sentence of 320 months for Count II [attempted first degree murder] plus the 60-month [firearm enhancement], with those two sentences concurrent to the 22-month sentence for Count I[V] [second degree unlawful possession of a firearm]."[4] CP at 367.

In May 2021, the sentencing court held a resentencing hearing. During the hearing, Chica Webber's mother and sister addressed the court. Chica's family emphasized the

---

[4] At the sentencing hearing, the State recommended a different sentence. The State recommended 320 months of confinement on count I plus the 60-month firearm enhancement, 256.5 months of confinement on count II plus the 60-month firearm enhancement, and 22 months of confinement on count III. The State further recommended that counts I and II run consecutively and that count IV run concurrent to the other counts.

importance of both forgiveness and consequences for Babbs's actions. Babbs's sister and cousins also addressed the court. Babbs's sister described Babbs as having "made a lot of changes in his life." Rep. of Proc. (RP) at 14. She recounted his efforts to improve himself and expressed her confidence in his ability to contribute to the broader community upon release.

Defense counsel questioned Babbs concerning the circumstances of his conviction. Babbs said he was "remorseful" and felt "ashamed that [he] caused this harm." RP at 21-22. Babbs recounted his traumatic childhood and experience with mental illness. Babbs described his rehabilitative efforts since incarceration, stating that he has "worked tireless[ly] over the years to dedicate [himself] to formal education, self-education, spiritual awareness, and mentor[ship]." RP 35. Babbs explained that since his incarceration, he obtained his GED (general equivalency diploma), became a barber, engaged in educational opportunities, and mentored other inmates.

Babbs argued for a downward departure from the standard range citing the following: (1) the multiple offense policy, (2) rehabilitation as a mitigating factor, and (3) Babbs had a diminished ability to conform his conduct to the law due to neurodevelopment factors. Babbs argued,

> it's not a question of knowing right from wrong. He knew right from wrong. . . . It's not a question of his cognitive ability. Certainly somebody at 21 is—has the ability to think and know the differences between right and wrong.
>
> It's more what the law speaks to in terms of impaired ability to conform your conduct. In that instant, he reacted on instinct, and it was an instinct tied to his brain. It was an instinct from growing up in the streets. It was an instinct from the trauma that he learned. . . .
>
> And that's a mitigating circumstance.

RP at 42-43.

In response, the State argued that although the court has "unfettered discretion when [sentencing] juvenile offenders," such discretion does not extend to offenders older than 18. RP at 47. The State acknowledged that the court "can still account for youthfulness and brain maturation . . . but in a far more structured way . . . largely through RCW 9.94A.535." RP at 47. In addressing Babbs's ability to discern right from wrong, the State recited his criminal history, explaining that he "knew from his history what was wrong and what was right, and [that] he had to know based on those experiences that what he was doing that night was absolutely wrong." RP at 51.

In delivering its oral ruling, the sentencing court made clear that it had "reviewed everything that ha[d] been submitted in this case, and [that the court] spent plenty of time going through the file." RP at 55. The court acknowledged Babbs's difficult childhood, substance abuse history, gang affiliation, criminal conduct, academic record, and mental health issues. The court also acknowledged that Babbs "[was] successful in Job Corp., and [was] trained . . . [in] masonry." RP at 55. The court described its familiarity with changes to the understanding of brain development and its familiarity with *Houston-Sconiers*.[5] The court explained that the case "draws the line at age 18 for the Court to have pretty much unfettered discretion in the sentencing [of] youthful offenders." RP at 56. However, the court explained that "after age 18, the Court has more constraints, and departing must be limited to exceptional circumstances where the defendant did not know his behavior was wrong or he was significantly impaired in controlling his behavior." RP at 56-57.

---

[5] *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017).

After reiterating that it had reviewed everything, the sentencing court declined to impose an exceptional sentence. The court explained that it

> is finding no support for those conclusions and is denying [Babbs's] request for an exceptional sentence.
>
> The Court's not saying that there aren't mitigating circumstances for [Babbs's] sentence. [Babbs does] claim a low IQ, yet [he was] able to complete Job Corp[s] with a trade. . . .
>
> This was not [Babbs's] first criminal offense, as we've gone through [his] criminal history, and it was not [Babbs's] first felony. [Babbs] actually had nine felonies and . . . ten misdemeanors in 16 criminal cases, many from threats and assaultive conduct. And [Babbs] knew well by 21 years and approximately nine months the consequences of stealing and the consequences of acting out violently.

RP at 57. The court repeated that it "considered the increased understanding of brain development and" Babbs's "personal circumstances, the trauma in his upbringing, and the lack of positive role models . . . in his youth and also the rehabilitative efforts in prison." RP at 58.

Noting that it could not "disregard that these were heinous, callous, selfish acts," the court sentenced Babbs at the low end of the standard range. RP at 58. The court ordered 240 months of confinement for the first degree murder conviction, 210.75 months for the attempted first degree murder conviction, and 22 months for the second degree unlawful possession of a firearm conviction. The court further ordered 60-month firearm sentencing enhancements for both the murder and attempted murder convictions. Babbs's standard range sentences and firearm sentencing enhancements for the murder and attempted murder convictions ran consecutively to each other while Babbs's unlawful possession conviction ran concurrent with his other convictions.

Babbs appeals.

7

ANALYSIS

Babbs argues that his de facto life sentence violates the Washington constitution's

prohibition against cruel punishment. Babbs contends that he is entitled to a resentencing

hearing that places an emphasis on forward looking factors. Babbs further contends that

individualized sentencing requirements to consider youth extend to adult offenders. Finally,

Babbs argues that the sentencing court misapprehended its discretion to impose a mitigated

sentence by imposing too strict a test in considering his impaired ability to reflect before acting

and failing to consider his rehabilitative efforts as a mitigating factor for a sentence below the

standard range. Because Babbs cannot appeal his standard range sentence, we do not reach the

merits of Babbs's arguments.

I. APPEALABILITY

The State argues that "Babbs may not appeal his standard range sentence" because the

"trial court properly recognized its discretion to impose an exceptional sentence and followed the

proper procedures" in declining to impose such a sentence. Br. of Resp't at 17. We agree.

A sentence that is within the standard range for an offense is not appealable. RCW

9.94A.585(1). A sentencing court's "decision regarding the length of a sentence within the

standard range is not appealable because 'as a matter of law there can be no abuse of

discretion.'" *State v. Mail*, 121 Wn.2d 707, 710, 854 P.2d 1042 (1993) (quoting *State v.

Ammons*, 105 Wn.2d 175, 183, 713 P.2d 719 (1986)). However, such a prohibition does not bar

a defendant's "'right to challenge the underlying legal conclusions and determinations by which

a court comes to apply a particular sentencing provision.'" *State v. Mandefero*, 14 Wn. App. 2d

825, 833, 473 P.3d 1239 (2020) (quoting *State v. Williams*, 149 Wn.2d 143, 147, 65 P.3d 1214 (2003)).

Where a defendant requests a sentence below the standard range, our review is limited "to circumstances where the court has refused to exercise discretion at all or has relied on an impermissible basis for refusing to impose an exceptional sentence below the standard range." *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997).

A.      *Refusal To Exercise Discretion*

A court refuses to exercise its discretion where "it refuses categorically to impose an exceptional sentence below the standard range under any circumstances." *Id*. "[A] trial court that has considered the facts and has concluded that there is no basis for an exceptional sentence has exercised its discretion, and the defendant may not appeal that ruling." *Id*.

Here, the sentencing court did not categorically refuse to consider Babbs's request for an exceptional sentence. Instead, the trial court "reviewed everything that ha[d] been submitted" and determined that an exceptional sentence was not warranted. RP at 55. The court elaborated that it "considered the increased understanding of brain development and [Babbs's] personal circumstances, the trauma in his upbringing, and the lack of positive role models . . . in his youth and also the rehabilitative efforts in prison." RP at 58.

In light of its review, the court sentenced Babbs to the low end of the standard range despite having characterized his crimes as "heinous, callous, selfish acts." RP at 58. The court discussed the limitations of its sentencing discretion, acknowledged that departure from the standard sentencing range was limited to exceptional circumstances, and declined to find the existence of such circumstances after its review of the record.

9

The record makes clear that the sentencing court was aware of its discretion to impose an exceptional sentence, considered the evidence submitted, and declined to exercise its discretion. Accordingly, the trial court did not categorically refuse to exercise its discretion in imposing Babbs's standard range sentence.

B.      *Reliance on an Impermissible Basis*

A court relies on an impermissible basis for refusing to impose an exceptional sentence where, for example, "it refuses to consider the request because of the defendant's race, sex or religion." *Garcia-Martinez*, 88 Wn. App. at 330. Babbs argues that the sentencing court imposed a de facto life sentence onto a late adolescent, which violated the state constitutional prohibition against cruel and unusual punishment.

Article I, section 14 of the Washington Constitution prohibits the imposition of "cruel punishment." Our constitution "further requires courts to exercise 'complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant,' even when faced with mandatory statutory language." *In re Pers. Restraint of Monschke*, 197 Wn.2d 305, 311, 482 P.3d 276 (2021) (quoting *Houston-Sconiers*, 188 Wn.2d at 21). A court has discretion to impose any sentence below the applicable SRA (Sentencing Reform Act of 1981, chapter 9.94A RCW) range when sentencing a juvenile defendant. *Houston-Sconiers*, 188 Wn.2d at 21. But when sentencing adult defendants, sentencing courts are "*allowed* to consider youth as a mitigating factor." *State v. O'Dell*, 183 Wn.2d 680, 696, 358 P.3d 359 (2015) (emphasis added).

In *Monschke*, two petitioners were convicted of aggravated first degree murder. 197 Wn.2d at 307. The trial court sentenced the 19- and 20-year-old defendants to mandatory life

without parole (LWOP) sentences under RCW 10.95.030(1). *Id.* at 307-08. Our Supreme Court held that because the aggravated murder statue required "LWOP for *all* defendants 18 and older, regardless of individual characteristics, [the statute] violates the state constitution." *Id.* at 326.

The court explained that "the variability in individual attributes of youthfulness are exactly why courts must have discretion to consider those attributes as they apply to each individual youthful offender." *Id.* at 323. The court emphasized that because "no meaningful neurological bright line exists between age 17 and age 18 . . . sentencing courts must have discretion to take the mitigating qualities of youth—those qualities emphasized in *Miller* and *Houston-Sconiers*—into account for defendants younger and older than 18." *Id.* at 326. *Monschke* left "it up to sentencing courts to determine which individual defendants merit leniency for [mitigating] characteristics" of youth. *Id.*

Recently, our Supreme Court held *Monschke* applies only to defendants under 21 years old, convicted of aggravated first-degree murder, and sentenced to mandatory LWOP. *In re Pers. Restraint of Davis*, 200 Wn.2d 75, 77-78, 514 P.3d 653 (2022).

In *Anderson*, 17-year-old Anderson was convicted for two counts of first degree murder and sentenced to just over 61 years of confinement. *State v. Anderson*, 200 Wn.2d 266, 272, 516 P.3d 1214 (2022). Anderson was resentenced under *Miller v. Alabama*.[6] *Anderson*, 200 Wn.2d at 272. At Anderson's resentencing hearing, the court explained that Anderson "'planned and initiated this attack'" and that there "'was nothing impetuous about it.'" *Id.* at 276. The resentencing court concluded that "Anderson had not shown that immaturity was a factor in his commission of [the] murders." *Id.* Despite those statements, the resentencing court considered

---

[6] 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

Anderson's rehabilitative efforts while incarcerated. *Id*. at 277. The resentencing court imposed the original sentence. *Id.* at 278.

On appeal, our Supreme Court affirmed the sentence and held "that the resentencing court appropriately considered Anderson's youthful characteristics and that substantial evidence supports the court's conclusion that Anderson's crimes did not reflect those characteristics." *Id*. at 280.

Here, the sentencing court did not rely on an impermissible basis in refusing to impose an exceptional sentence. *Monschke* does not extend to Babbs's circumstance as he was 21 when he committed the crimes. *Monschke*'s holding is limited to defendants between 18- to 20-years-old and does not extend to 21-year-old defendants. Furthermore, Babbs did not face a mandatory LWOP sentence like in *Monschke*; here, the sentencing court had discretion to impose an exceptional sentence. Also, after reviewing the entire record, the sentencing court expressly found no support for the conclusions that Babbs "did not know his behavior was wrong or [that] he was significantly impaired in controlling his behavior" such that an exceptional sentence was warranted. RP at 56-57.

Rather than rely on an impermissible basis in declining to impose an exceptional sentence, the sentencing court properly considered the facts of Babbs's case. The sentencing court "reviewed everything that [was] . . . submitted" by the parties, including a declaration by Babbs's codefendant and letters submitted on Babbs's behalf. RP at 55. The court considered Babbs's low IQ, "the increased understanding of brain development and . . . Babbs'[s] personal circumstances, the trauma in his upbringing, and the lack of positive role models . . . in his youth and also [Babbs's] rehabilitative efforts in prison." RP at 58. The court further recounted

12

Babbs's "heinous, callous, selfish acts" that caused the death of Chica Webber and her unborn child. RP at 58. The court explained that in light of its review, it was denying Babbs's request for an exceptional sentence and imposing a sentence at the low end of the standard sentencing range. Although Babbs may not agree with the sentencing court's decision, such disagreement is not premised on an appealable basis.

Accordingly, after considering the facts and concluding that there was no basis for an exceptional sentence, the sentencing court properly exercised its discretion and imposed a standard range sentence. Thus, we conclude that Babbs may not appeal his standard range sentence.

### STATEMENT OF ADDITIONAL GROUNDS

In his SAG, Babbs argues that (1) the State engaged in prosecutorial misconduct where it "presented . . . Babbs' criminal history incorrectly during the resentencing," resulting in a higher sentence and miscalculated offender score, and (2) the court erred "in using . . . Babbs'[s] criminal history to conclude that . . . [his] brain was developed, and he knew right from wrong when he committed the crime as a young adult." SAG at 2.

We address Babbs's challenge to the calculation of his offender score; however, having determined that Babbs may not appeal his standard range sentence, we decline to address his remaining arguments.

Babbs argues that the State misrepresented his criminal history during his resentencing hearing, that the sentencing court miscalculated his offender score, and sentence length as a result. Specifically, Babbs argues that his offender score should be calculated as 3, not 4, on his attempted murder conviction. Babbs contends that the presentation of criminal history caused

the court to decline imposing concurrent sentences and that such misrepresentation amounted to prosecutorial misconduct.

To the extent Babbs is arguing that the trial court incorrectly calculated his offender score, this claim fails. While Babbs is correct that his juvenile offenses committed prior to him turning 15 years old should not be used in calculating his offender score, there is no evidence that they were. Under *Weatherwax*,[7] the trial court correctly calculated Babbs's offender score as 0 on his first degree murder conviction. RCW 9.94A.589(1)(b). In calculating Babbs's offender score as 4 for his first degree attempted murder conviction, the trial court correctly included one point for each prior adult nonviolent felony conviction and half a point for each prior qualifying juvenile nonviolent felony conviction. RCW 9.94A.589(1)(b); RCW 9.94A.525(9). In calculating Babbs's offender score as 5 for his unlawful possession conviction, the trial court correctly included one point for each adult prior felony conviction, half a point for each qualifying juvenile prior conviction, and one point for his current violent adult felony conviction. RCW 9.94A.589(1)(a); RCW 9.94A.525(7).

Accordingly, the trial court correctly calculated Babbs's offender score. Having determined that Babbs may not appeal his standard range sentence and that the trial court correctly calculated Babbs's offender score, we decline to consider his remaining SAG claims.

CONCLUSION

We affirm Babbs's sentence.

---

[7] 188 Wn.2d at 156 (holding "that for purposes of RCW 9.94A.589(1)(b), (1) anticipatory offenses have the same seriousness level as their target crimes and (2) when the seriousness levels of two or more serious violent offenses are identical, the trial court must choose the offense whose standard range is lower as the starting point for calculating the consecutive sentences.").

14

No. 55776-2-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Lee, P.J.

Price, J.